**In re the Marriage of Melinda Ann PETERSON, Petitioner, Appellant,**

**v.**

**Christopher Patrick PETERSON, Respondent.**

**No. CX–86–830.**

Court of Appeals of Minnesota.

Sept. 23, 1986.

Mary Louise Klas, Klas and Klas, St. Paul, for appellant.

William E. Haugh, Jr., Collins, Buckley & Haugh, St. Paul, for respondent.

Considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ. with oral argument waived.

## OPINION

LESLIE, Judge.

Mother appeals from judgment granting her and father joint legal and physical custody of their child, alleging the facts do not support the trial court's determination. She also claims the court erred in refusing to grant her attorney fees. We affirm in part, reverse in part and remand.

## FACTS

Appellant Melinda Peterson and respondent Christopher Peterson were married September 24, 1983 in Reno, Nevada. Appellant is from Reno while respondent is from Minnesota. Shortly after they were married they moved to Minnesota. On March 20, 1984 they had a child. Appellant, who did not work outside the house at this time, was the primary caretaker of the child during his infancy.

The parties began having marital problems in late 1984 and attended some marriage counseling sessions. In April, 1985, appellant conferred with an attorney and asked respondent to leave the parties' apartment. On May 29, 1985 a referee ordered respondent to leave the parties' apartment, granted appellant temporary physical custody of the child, and granted temporary joint legal custody. Respondent was allowed at least three overnight visitations each week.

Kathy Steen, a family court officer, conducted a custody evaluation in which she concluded that both parents had agreed to share legal custody and, because of the child's age, a primary residence was necessary for the daily care of the child. She recommended joint legal custody, physical custody with appellant, and a time sharing schedule which allowed respondent three overnights and alternate holidays.

On September 20, 1985 an evidentiary hearing was held. Appellant testified that respondent spent little time with the child until the divorce proceedings began and that his recent caring for the child was motivated by his desire to gain custody of the child. She testified that respondent does not respect her point of view and does not openly and honestly communicate with her. Although she felt they had not been able to cooperate, she also indicated that they had worked out an agreement with social workers concerning visitation and they both had generally abided by that agreement. She testified that she intends to move back home to Reno. She admitted that during mediation she had agreed to joint custody, but because she and respondent had not cooperated she asked for sole legal and physical custody of the child.

Respondent admitted that appellant was the primary caretaker when the child was an infant, but argued that since appellant began working in April, 1985, she has not acted as primary caretaker. Respondent felt that both he and appellant have similar parental values and goals, as each of them want the child to be raised Catholic and attend parochial school if possible. He admitted that he has had disagreements with appellant concerning the child, but he felt those disagreements were not very significant. He stated that although some minor problems arose with the temporary shared custody, the custody arrangement worked out well because he and appellant had cooperated in working out the schedule. He testified that he would probably move to Reno if he were granted joint physical custody, but that he would probably stay in Minnesota if not granted joint physical custody.

The family court officer, Kathy Steen, also testified. She felt that appellant was the primary caretaker in June when the dissolution proceedings began, but that both parents have a close and caring relationship with the child. She felt that the

joint custody agreement had worked very well and that both parties had showed a willingness to make adjustments to do what was best for their child. She felt that they cooperated and respected each other and that they tried to rationally and objectively deal with each other's positions. Consequently, she recommended joint legal custody and primary residence with appellant.

The trial court found that since July, 1985 the parties have had de facto joint physical custody of the child. The court indicated that this arrangement had worked out well for both parents and the child. The court found that the parties agree on important decisions concerning raising the child, and further found that each party is fit and proper to be physical custodian of the child.

The court then ordered joint legal and joint physical custody of the child as the parties had "amply demonstrated that they have the necessary concern for the welfare of said child and commitment and communication abilities to place his best interests first and foremost." The court allowed appellant custody on four days and nights each week with respondent allowed custody for three, including either Saturday or Sunday. The court ordered the parties to carry out their custody responsibilities in Nevada and further provided an additional custodial arrangement which would apply if they mutually agreed to relocate to another state.

Respondent brought a notice of review pursuant to Rule 53 claiming the court erred in requiring the custody to be carried out in Nevada. Respondent also brought a motion for amended findings or a new trial. Appellant in turn moved for amended findings or a new trial, claiming that she should be granted sole custody.

After a hearing on both parties' motions, the court issued its findings and order on January 24, 1986. The court affirmed the earlier custody order. Because respondent failed to move to Reno, the court vacated the original visitation schedule and ordered the parties to submit suggestions for respondent's exercise of joint custody.

On April 2, 1986, the court found that "since the entry of the Decree both parties have amply demonstrated that they are unable or unwilling to mediate between themselves quality times for each of them to be with their minor child." The court then set out a specific visitation schedule so that when the parties live in different geographic areas respondent would have the child, until he starts kindergarten, for one four-day weekend per month, eight consecutive weeks in the summer, four seven-day visits not in the summer and alternating holidays that shall be for a period of three consecutive days.

## ISSUES

1. Did the trial court err in granting joint legal and physical custody of the parties' minor child?

2. Did the trial court err in failing to grant appellant attorney fees?

## ANALYSIS

■ 1. Custody determinations must be based on the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1984). The court must consider the factors contained in Minn.Stat. § 518.17, subd. 1, and when joint custody is contemplated the court must consider the additional factors contained in Minn.Stat. § 518.17, subd. 2. The factors to consider when joint custody is contemplated include the ability of the parents to cooperate in raising the children, the existence of methods for resolving major disputes concerning the child, the parents' willingness to use those dispute resolution methods, and whether it would be detrimental to the child if one parent alone were to have sole authority over the child's upbringing. *Id.* The court need not make specific findings concerning each of these factors if the findings as a whole reflect that the trial court has taken the relevant statutory factors into consideration in reaching its decision. *See Rosenfeld v. Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171–72 (1976). The scope of our review

requires that we affirm the trial court's custody determination unless that court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

Appellant initially contends that the trial court abused its discretion in ordering joint legal custody. She argues that there is nothing in the record to indicate that the court considered the parties' ability to cooperate in raising the child, the existence of methods for resolving major disputes and whether it would be detrimental to the child if one parent alone were to have sole authority over the child's upbringing. Appellant claims that the court used joint legal custody as a "legal baseball bat" to coerce the parties into cooperating. *See Chapman v. Chapman,* 352 N.W.2d 437, 441 (Minn.Ct.App.1984).

█ We do not believe the trial court abused its discretion in ordering joint legal custody. The report prepared by Kathy Steen supported the trial court's determination. It stated that the parties both express love and desire a positive lifestyle for their son. The report stated that the parties have similar values and goals for their child and that major decision making would be done together based upon their similar values. Furthermore, testimony concerning the parties' cooperation during the pendency of the dissolution action supports the trial court's determination. Although there was some evidence that the parties had problems cooperating, this must be expected during the course of a contested dissolution. Even appellant admitted that the parties had cooperated and had worked out a custody arrangement with the help of social workers. The problems between the parties were not so severe that we must say the trial court erred in granting joint legal custody of the child.

However, the issue of joint physical custody is different. *See Ohm v. Ohm,* 393 N.W.2d 411 (Minn.Ct.App.1986). A long line of cases have established that joint physical custody is not a preferred situation. In *McDermott v. McDermott,* 192 Minn. 32, 255 N.W. 247 (1934), the trial court granted divided custody of the parties' three year old son and the supreme court reversed. The court stated that although there are exceptional cases where divided custody of a young child may be proper, as a general rule divided custody of a young child is not in the child's best interest. *Id.* at 36, 255 N.W. at 248.

In *Kaehler v. Kaehler,* 219 Minn. 536, 18 N.W.2d 312 (1945) the supreme court enunciated the policy clearly:

> We are of the opinion that the divided custody of a child of such tender years is not desirable. Regularity in the daily routine of providing the child with food, sleep, and general care, as well as stability in the human factors affecting the child's emotional life and development, is essential, and it is difficult to attain this regularity and stability where a young child is shunted back and forth between two homes.

*Id.* at 539, 18 N.W.2d at 314. *See Brauer v. Brauer,* 384 N.W.2d 595 (Minn.Ct.App. 1985).

Respondent contends that the matter is controlled by *Berthiaume v. Berthiaume,* 368 N.W.2d 328 (Minn.Ct.App.1985). There, this court affirmed the trial court's order granting the mother custody of the children during the school year and the father custody during the summer. As in the present case, the trial court found that each parent had a strong and reciprocal loving relationship with the children and that both parents were capable of providing the children with proper care and discipline. The trial court further determined that the children needed the guidance and care of both parents and that their mutual concern for the children would enable them to cooperate in the future. In affirming, this court stated

> Obviously, there is evidence that the parties have not cooperated with one another during the dissolution proceedings. * * * The record does not, however, indicate that the parties have basic differences concerning the general upbringing of their children. There is little evidence

that the parties cannot communicate or cooperate in reaching major decisions concerning their children. Both parties have been receptive to the social service agencies that have been involved with helping the children. Both parties agree that their children need continued therapy. Both parties share the same concern for providing the children with a stable living environment. The fact that the parties share these concerns demonstrates their ability to cooperate and agree on the major issues in their children's lives.

*Id.* at 332–33.

In some respects the present case is similar to *Berthiaume*. As in *Berthiaume*, the parties here have similar values and goals in raising the child. They also have been receptive to the social service agencies involved with helping the child. They both cooperated in implementing the shared custody agreement required by the temporary order.

■ The present case is, however, distinguishable from *Berthiaume*. First, the children in that case were six and eight years old, while the child in this case is only two years old. We believe there is a greater need for consistency in the life of the two year old than for older children. *See Kaehler*, 219 Minn. at 539, 18 N.W.2d at 314. Second, in the present case appellant plans to live in Nevada while respondent intends to stay in Minnesota. With the joint physical custody arrangement in the present case the child will constantly be shunted back and forth between Nevada and Minnesota. We do not believe this is in the child's best interest. *See Heard v. Heard*, 353 N.W.2d 157, 162 (Minn.Ct.App. 1984).

■ We hold that the trial court abused its discretion in ordering joint physical custody. We therefore reverse the trial court's determination on that issue and order sole physical custody be granted to appellant, who the record clearly shows was the primary caretaker at the time the dissolution proceedings began. *See Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985).

We remand for the court to order proper visitation, keeping in mind the stability which is necessary for such a young child.

2. Appellant also contends that the trial court erred in failing to award her attorney fees. She argues that the legal proceedings have been arduous and the discrepancy between the parties' income significant. Furthermore, she argues that this litigation has been protracted due to respondent's aggressive pursuit of custody even after he changed his mind about moving to Nevada.

■ It is well-established that an award of attorney's fees in a dissolution action is within the discretion of the trial court and the court's decision will not be disturbed on appeal absent a clear abuse of discretion. *See Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977). Although there is some discrepancy between the incomes of the parties, we do not believe the trial court abused its discretion in failing to award appellant attorney fees at the present time. This dissolution is a bifurcated proceeding and attorney fees can be considered when maintenance and property division are decided.

## DECISION

The trial court erred in ordering joint physical custody but did not err in ordering joint legal custody or in refusing to award appellant attorney fees.

Affirmed in part, reversed in part, and remanded.