**In re the Marriage of Kenneth D. KANGAS, Petitioner, Appellant,**

v.

**Wendy Gail KANGAS, Respondent.**

**No. CX–87–59.**

Court of Appeals of Minnesota.

June 9, 1987.

Raymond A. Charpentier, Brainerd, for appellant.

Karen I. Haukebo, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and LESLIE, and

STONE,* JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Applying the *Pikula v. Pikula* child custody preference, the trial court placed custody of the child with respondent Wendy Kangas on the basis of circumstances existing during the period of time between the child's birth in June 1983 and separation of the parents in July 1984. Appellant contends the *Pikula* concept was unjustly applied. We affirm.

## FACTS

Appellant and respondent were married in August 1982. Their daughter, Emily, was born on June 24, 1983. Thirteen months after the child's birth, the parties separated.

Appellant Kenneth Kangas began separate maintenance proceedings in July 1984. At the November 1985 trial, he amended his pleadings to request dissolution relief. The trial court took the testimony of 18 witnesses and received two social service reports, one on the circumstances of appellant and one on the circumstances of respondent Wendy Kangas. In February 1986, the trial court made its conclusion, based upon extensive findings, to place custody of Emily with Kenneth Kangas, subject to respondent's reasonable visitation rights. The trial court made this decision on ultimate findings that "the best interests of the child would be served if [appellant] had the care, custody and control of the child."

■ Respondent proceeded to retain new counsel for her post-judgment motions. She moved for amended findings of fact, conclusions of law and order for judgment, contending the trial court's custodial placement was in conflict with the standard of *Pikula*. Respondent further asked that the trial judge recuse himself because of her belief that the judge was biased. The recusal request was refused. The trial court convened its post-judgment hearing on August 6, 1986, and issued its amended order on December 6, 1986,[1] placing physical custody with respondent. Again, the trial court made extensive findings of fact.

### a. *Initial Trial Court Decision*

In its initial decision, the trial court found that "both parties have shared the responsibilities for primary care of the child," but that Wendy Kangas performed a majority of the child care duties. The trial court also found that while the parties resided together, appellant indicated that the early morning feedings and bathing of the child were not his duties.

Beginning early in 1984, child care circumstances changed. Respondent began attending aerobics classes four to five evenings per week and in April 1984 returned full-time to her seasonal job at a resort. During respondent's absence in the evening hours, appellant assumed responsibility for the bathing and caring of Emily. As marital differences escalated in 1984, there were episodes where respondent drank heavily. The trial court found that respondent's care for Emily "deteriorated" and that she acted "like a person in high school who has not grown up and assumed the responsibilities of a parent and spouse."

During the eight month period following their separation, respondent cared for Emily each day until approximately 5:00 p.m. when appellant returned from his work. Appellant performed the child care duties in the evening and early morning hours at this time. Beginning in 1985, the parties agreed to split custody, with each caring for Emily about one-half of each two week period.

In its decision to place custody with Kenneth Kangas, the trial court found that

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. There is no explanation provided for the trial court's failure to conduct a hearing earlier than six months after the date of trial. Furthermore, there is no explanation for the five month lapse before the post-trial order was issued in December 1986. Given the unique need of children for settling issues of this kind, it is evident that the disposition was inappropriately delayed.

Emily had "an appropriate interaction and interrelationship with [appellant] and a less appropriate interaction and interrelationship with respondent because of respondent's immaturity." The court noted that the child showed no excitement toward respondent. The court also found that respondent suffered from mood swings. The court found it important to note that respondent's immaturity makes her a less desirable custodial parent since she "believes the child provides her only reason to fulfill her potential and * * * that her life would be boring without [Emily]." In contrast, the court found that appellant had "natural and easy" dealings with the child, and that the child showed excitement toward her father.

Overall, the trial court found that each party had the capabilities and disposition to provide Emily with love and care but that respondent's immaturity indicated it would be in Emily's best interests to place her custody with appellant.

b. *Post-trial Decision*

In its amended order, the trial court made findings that focused on the circumstances of the parties prior to their separation in July 1984. The trial court made additional findings that respondent nursed the child after birth and took care of the nighttime feedings once Emily was switched to bottle feeding. Respondent also was responsible for taking Emily to the doctor and appellant admits he did not participate in this portion of child care. Furthermore, the trial court found that respondent made all arrangements for substitute child care.

In general, the trial court found that in the parties' division of labor, Kenneth Kangas did some housework and washed the dishes while Wendy Kangas cared for Emily. Appellant admits he tried to spend as much time as possible with his family despite his busy schedule and that he "helped with the child care, but not a whole lot."

The trial court's amended conclusion notes that respondent was the primary parent from the time of Emily's birth until the parties separated and this action was commenced. The trial court specifically acted in accordance with *Pikula,* stating "the relevant time period for application of [the Pikula] factors is the period between the birth of the child and the commencement of the action." The trial court further concluded that respondent was not unfit to be the custodian of Emily. Based upon its initial findings and the additional findings contained in the amended order, the trial court placed custody of Emily with respondent.

### ISSUES

1. Did the trial court abuse its discretion by placing the child with respondent?

2. Did the trial court abuse its discretion in denying respondent's request for attorney fees?

### ANALYSIS

1. This court's review of a trial court's custody determination is to ascertain "whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

It is undisputed that the trial court was compelled to identify the primary parent of the child. The *Pikula* court stated:

[W]e hold the factors set forth in Section 518.17, subd. 1, require that when both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody be awarded to the primary parent absent a showing that that parent is unfit to be the custodian.

*Pikula,* 374 N.W.2d at 713. The quoted language is prospective in nature and requires the trial court to apply the *Pikula* preference accordingly.

While recognizing the standard of *Pikula,* appellant objects to the application of the preference which disregards the factors the trial court initially relied upon in placing custody with him. The trial court's original order included detailed findings concerning the circumstances of the parties

from the time of their separation to the present. In its amended order, the trial court supplemented its original findings by making findings regarding the period of time prior to the parties' separation. Utilizing both sets of findings, the trial court determined that respondent was the primary parent under *Pikula*.

In *Pikula*, the supreme court remanded the case for purposes of determining the primary parent at the time the dissolution proceeding was commenced. The *Pikula* court stated that:

> The phrase "at the time the dissolution proceeding was commenced" is used to indicate the point in time at which the family relationships were physically disrupted by events leading to the dissolution of marriage, e.g., at the time of the parties' separation or the interruption of the functioning full family unit.

*Pikula*, 374 N.W.2d at 714, n. 3.

■ The *Pikula* court further explained that "any disruption in the relationships between the children and their parents occasioned by the events leading to the divorce is irrelevant to the [primary parent] determination." *Id.* at 714. We have held, construing these references to the remand in *Pikula*, that all prospective applications of the primary parent preference are to focus on circumstances before the date of separation. *See, Peterson v. Peterson*, 393 N.W.2d 503 (Minn.Ct.App.1986).

■ We cannot say that the trial court abused its discretion in misapplying the law to the circumstances of this case. Nor are the findings lacking evidentiary support. Examining the circumstances before the parties' separation in July 1984, the record supports the finding that respondent was the primary caretaker and that custody should be placed with her.

Appellant has briefed the proposition that the trial court should be free to flexibly apply the rule stated in *Pikula*. It is this freedom and flexibility of the trial court that compels us to affirm. It is inappropriate for this court to substitute its judgment for the final assessment of the case by the trial court.

■ Appellant also contends that by disregarding the facts initially recited in the findings, the trial court has neglected to protect the best interests of the child. It is true that the trial court acted in spite of many of its initial findings and that many of those findings related to the best interests of the child. However, it also is true that those findings focused on circumstances arising in and after July 1984. Those circumstances are critical only in separate child custody modification proceedings. In the words of our supreme court:

> After an award of custody on remand [based on circumstances before separation], subsequent changes in circumstances of the children or custodian would be addressed by the noncustodial parent in a motion for modification of custody under Minn.Stat. sec. 518.18.

*Pikula*, 374 N.W.2d 714, n. 3.

2. Respondent also contends that the trial court erred in failing to award her attorney fees. A court's denial of attorney's fees will not be disturbed on appeal absent a clear abuse of discretion. *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct. App.1984). We conclude there was no abuse of discretion here.

### DECISION

The trial court's award of custody to respondent was not an abuse of discretion. The court did not err in refusing to award respondent attorney fees.

Affirmed.