**In re the Marriage of Jean Marie PEKAREK, Petitioner, Appellant,**

v.

**Kenneth DuWayne PEKAREK, Respondent.**

No. C2–85–1279.

Court of Appeals of Minnesota.

March 25, 1986.

Douglas Peine, Minneapolis, Hugh P. Markley, St. Paul, for appellant.

Michael L. Lander, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

CRIPPEN, Judge.

During the course of the marriage, the parties adopted three children. In the dissolution decree, the trial court placed the children with their father. The trial court also distributed the parties' property and awarded maintenance and child support. Jean Pekarek appeals from the order. We affirm as modified.

### FACTS

The parties were married in 1970 and the marriage was dissolved in 1985. They have three dependent children: David, born November 19, 1976; Heather, born July 25, 1974, and Holly, born September 13, 1973.

I.  Custody

Each of the parties sought custody of the three children. The trial court ordered a custody and visitation investigation by the Ramsey County Department of Court Services. Chris Bray, a representative of that department, recommended that respondent be given custody of the children. The court relied on Bray's report and adopted the findings of the report.

Bray found that appellant Jean Pekarek was "emotionally less stable" than her husband, that she was "unwilling to look at her weaknesses" in parenting, and that she had an "explosive and violent temper." Bray also reported that appellant actively discouraged the children from having a relationship with their father. Bray said that the children wanted a relationship with their father, that he was at least as involved as appellant in bringing up the children, and that he was more able than his wife to meet the emotional needs of the children. The report indicates that respondent was receiving therapy and appeared willing to look at his weaknesses and to avoid disturbing the relationship of the children with their mother. Bray concluded that respondent was "more focused" on the needs of the children and that appellant used the children to meet her needs.

The court found that it was in the best interests of the children that they be placed with their father. The court ordered appellant to pay $300 per month in child support and allowed her reasonable visitation.

Jean Pekarek claims that respondent was abusive of the children and that he did not have a close relationship with them. Respondent admits to some abuse of the children. He admits that he once abused David, that there were instances of abusive behavior towards another child placed with the parties for a short time, and that he must work on his temper.

While appellant had custody of the children, respondent reported on three different occasions that he suspected abuse. Investigating authorities, however, never found any evidence that appellant was abusing the children. Respondent also claims that appellant has threatened suicide and has threatened to kill the children. Appellant discounts respondent's claim that she threatened suicide by stating that she referred to suicide only in a figurative manner; she had lost her job and was despondent, and she made remarks to others that they construed to be threats of suicide.

Both parents claim to be the primary caregiver for the children. Appellant claims she organized daycare for the children and was responsible for discussing the children's educational needs with the schools. She also cooked meals and gave the children baths. She said the children were happy living with her and that they have a good home. Respondent claimed he cooked meals, washed dishes, and performed laundry duties. He said he transported the children to their activities and that he "was the babysitter as much as Jean." The trial court found that neither parent is the primary parent.

Both parties and the children are engaged in counseling.

## II. Distribution of Marital Property

### A. Homestead

During the marriage, respondent's father assisted the parties in their purchase of a home. In 1971, respondent's father gave the parties $3000; in 1975, he forgave $8000 of a debt the parties owed him, and in 1977, he forgave another $3100 on the debt. The debt arose from the parties' purchase of another home. Respondent claimed, and the trial court agreed, that the gifts from respondent's father were gifts to respondent alone and constituted part of respondent's nonmarital property. Appellant claims that finding was erroneous.

The trial court also found that marital funds should be used to pay the remaining $7600 debt owed to respondent's father. Appellant claims that is inconsistent with the court's finding that the debt forgiveness had been a gift to respondent. At the very least, appellant claims, the finding is unfair.

The parties' temporary order awarded the homestead to appellant and ordered that she be responsible for the mortgage payments and other expenses of the home. In August 1984, appellant moved out of the house because she was unable to afford it. Respondent moved into the house and took over responsibility for it. The trial court ordered appellant to make the mortgage payments through October, even though appellant moved out in August. Appellant claims that was error. The court also gave respondent credit for the household expenses he incurred, but did not give appellant the same credit. Appellant claims that was error.

### B. Deferred Payment of Pension Interest

The trial court awarded to appellant a share in respondent's pension fund, but deferred payment to appellant until respondent quits his job or retires. The trial court did this because it found the parties had very few assets and that a present obligation to pay appellant her share of the pension would work a hardship upon respondent. Appellant claims the deferral works a hardship upon her and that the deferral was an error.

III.  Other Alleged Errors

A.  Appellant claims the court erred in awarding $300 per month in child support to respondent because the court made no findings on the subject.  Appellant also argues that the trial court improperly departed from the child support guidelines without stating its reasons for doing so.

B.  Appellant claims the trial court erred by failing to incorporate into the dissolution decree the stipulation between the parties that certain life insurance policies should be kept in effect.

### ISSUES

1.  Did the trial court abuse its discretion in placing custody of the parties' children with respondent?

2.  Was the trial court's award of child support clearly erroneous?

3.  Was the trial court clearly erroneous in its determination that gifts from respondent's father were respondent's nonmarital property?

4.  Did the trial court abuse its discretion in ordering appellant to pay mortgage payments and other expenses?

5.  Did the trial court abuse its discretion in deferring payment to appellant of her share of respondent's pension?

6.  Was the trial court's failure to incorporate into the dissolution decree an agreement by the parties clearly erroneous?

### ANALYSIS

1.  An appellate court's review of decisions in a dissolution case is limited.  We may only consider whether the trial court "abused its discretion by making findings unsupported by the evidence or by improperly applying the law."  *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).  The trial court's findings must be sustained unless clearly erroneous.  *Id.*

■  A trial court making a child custody decision must make the placement that is in the best interests of the children.  *Id.* The court must consider a number of statutory factors to determine the best interests

of the children.  *See* Minn.Stat. § 518.17, subd. 1 (1984).  This statute requires that if either parent would be a suitable custodian, the intimacy of the relationship between the primary parent and the child must be salvaged unless there are " 'strong reasons which relate specifically to the [primary] parent's capacity to provide and care for the child.' "  *Pikula,* 374 N.W.2d at 711 (quoting *Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn.1980) ).  The *Pikula* court stated that

> [a]warding custody to the non-primary parent without such strong reasons, when the primary parent has given the child good care, may constitute reversible error.

*Pikula,* 374 N.W.2d at 711.  Thus, because of the intimacy a child and the primary parent enjoy, there is a presumption that custody of a child should be given to the primary parent.  That requires first a determination of who, if anyone, is the primary parent.

■  The trial court found that the primary parent preference did not arise because neither of the parties is the primary parent.  *See id.* at 713–14.  The evidence supports this finding.

Since there was no custodial preference in this case, the trial court properly utilized other considerations to determine which custodial situation would serve the best interests of the children.  *See id.*

■  The trial court relied upon a custody evaluation in determining that custody should be given to respondent.  The trial court has the discretion to do so, but may also disregard the evaluation if outweighed by other evidence.  *Id.* at 712.  The report and the findings affirming it specify numerous factors related to the interests of the children, including the emotional health of the parties and the likely support each party would give to the relationships of the children with the other parent.  This custody determination was within the discretion of the trial court and will not be disturbed on appeal.

■ The court did not ask the children what preference they had for custodial arrangements, even though appellant asked the court to do so. A child's preference, if any, is a factor the court system must consider when determining custody. *Auge v. Auge,* 334 N.W.2d 393, 396 (Minn.1983). The children are all of such an age that they could express a custodial preference, since at the time of trial, the youngest was eight years old. The trial court determined, however, that the children were in such a confused and anxious state that a discussion with them about their custodial preference would be fruitless. This determination is sufficiently supported by the evidence. The court considered the preference and its treatment of the factor was within the bounds of its discretion.

2. The trial court ordered appellant to pay respondent $300 per month for child support. Appellant claims the award was erroneous.

■ To determine the amount of child support that an obligor shall pay, the trial court must determine the obligor's current net income and multiply that by the percentage indicated in the child support guidelines. Minn.Stat. 518.551, subd. 5 (1984). The evidence indicates that appellant's net income is $789 per month. Thus, under the guidelines, her child support obligation is $244.59 per month. The trial court made no findings to justify an upward deviation from the guidelines. *See* Minn.Stat. § 518.551, subd. 5(e). There is nothing to indicate that appellant's support obligation should exceed $244.59, so the trial court's determination that she should pay $300 per month is clearly erroneous. We thus modify the trial court's support award to comport with appellant's obligation as dictated by the guidelines.

■ 3. A gift made to one party to a dissolution but not the other is the donee party's nonmarital property. Minn.Stat. § 518.54, subd. 5(a) (1984). The classification of property as marital and nonmarital is an issue of law, but we must defer to underlying findings of fact by the trial court. *Kucera v. Kucera,* 275 Minn. 252,

254–55, 146 N.W.2d 181, 183 (1966). The party seeking the nonmarital characterization of the property has the burden of proof. *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 177 (Minn.Ct.App.1984).

■ The trial court found in this case that respondent had met his burden of proving he received gifts from his parents. There is a basis in the record for that finding, and we cannot set aside the trial court's determination. Appellant claims that the trial court's conclusion that marital funds should be used to pay the remainder of the debt owed to the father should render the property marital. This factor is one deserving of consideration, but it is not conclusive, and the trial court was not required thereby to find the property was marital.

4. Although appellant vacated the parties' home in August 1984, the trial court ordered her to make the mortgage payments from July through the first half of October. Appellant claims that was error since respondent was living in the house after August and should have been made responsible for mortgage payments from that time on.

The trial court must make an equitable distribution of property and liabilities, and it has broad discretion in doing so. *Kreidler v. Kreidler,* 348 N.W.2d 780, 784 (Minn.Ct.App.1984). As a check on that broad discretion, however, trial courts are required to make particularized findings. *Riley v. Riley,* 369 N.W.2d 40, 44 (Minn.Ct. App.1985), *pet. for rev. denied,* (Minn. Aug. 29, 1985).

■ The trial court here found that "petitioner was solely responsible for the payment of the July, August, September and first half of the October mortgage payments * * *." Appellant abandoned the house in August, causing respondent to incur expenses that he paid from his own funds. Since appellant could be expected to share in housing expenses, it was within the discretion of the trial court to order appellant to pay the additional mortgage payments.

Other expenses for which appellant is charged are not clearly erroneous. These expenses were incurred by respondent in preparation for selling the house and for repair and maintenance. The trial court had the discretion to order appellant to help with those expenses.

5. The trial court deferred payment to appellant of her interest in respondent's pension until respondent terminated his employment or retired. Appellant claims that was error because it causes her hardship.

The trial court deferred payment of the pension interest because the parties have few cash assets available. *See Taylor v. Taylor*, 329 N.W.2d 795, 798–99 (Minn. 1983) (deferred jurisdiction method of splitting the assets of a pension fund should be utilized where the parties have few cash assets). The *Taylor* court stated, however, that it is preferable to divide the interest in the pension fund at the time of the dissolution, if no hardship to the parties would result. *Id.*

It is largely within the discretion of the trial court to decide when and how pension funds should be distributed. *Id.* at 798. The trial court found that because of the parties' lack of cash assets, appellant should not receive her share of the pension until respondent receives the funds from the pension. The evidence supports this finding, and it must be affirmed.

6. Appellant claims the parties stipulated that certain insurance contracts would be kept in effect. The trial court failed to incorporate that stipulation into the order, and appellant claims that was error. Because there is no written evidence of a stipulation, we are unable to conclude that an error occurred.

### DECISION

The trial court's placement of custody with respondent and distribution of property was not clearly erroneous. The trial court erred in requiring appellant to pay more than $244.59 per month as child sup-

port, so the support award is modified downward to $244.59 per month.

Affirmed as modified.