**In re the Marriage of Robbie Scott RIMER, Petitioner, Respondent,**

**v.**

**Regina Anne RIMER, Appellant.**

**No. C3–86–1060.**

Court of Appeals of Minnesota.

Nov. 4, 1986.

Ronald Resnick, Salita, Salita, London & Resnick, Brooklyn Center, for respondent.

Constance S. Baillie, Legal Aid Society of Mpls., Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Regina Rimer appeals from a dissolution judgment and decree in which the trial court denied her custody without applying the primary caretaker rule. We reverse and remand.

## FACTS

Robbie Rimer, a native Minnesotan, met Regina when he was stationed in the Navy in Virginia, where she had lived all her life. They married in November 1981, and their son Justin was born in October 1982. Two months later the family moved to Minnesota when Robbie was discharged. Within four months of the relocation, Robbie moved out of the family residence and petitioned for dissolution. It is undisputed that Regina was the child's primary caretaker until that time. The July 1983 temporary order granted joint legal custody, physical custody to Regina, and visitation to Robbie.

Regina remained the primary caretaker for the next year and a half, while Robbie exercised visitation sporadically. In December 1984 Regina took Justin on a two-month visit to her parents in Virginia because she hadn't been home in two years and her mother was ill. According to his testimony at trial, Robbie knew of Regina's desire to make the trip, but refused to give his permission because Regina would not agree to certain terms of a proposed stipulation.

While Regina and the child were gone, Robbie moved for temporary custody or an abatement of child support. Thus began a custody battle that has lasted nearly two years and has landed the parties in court nearly a dozen times.

In January 1985 Robbie gained temporary physical custody when a Hennepin County District Court referee found Regina's two-month trip to Virginia to be a willful denial of visitation rights. Although this order was soon vacated as "unduly harsh and severe," Robbie has retained temporary physical custody to this date by alleging that Regina was abusing and neglecting the child.

During this prejudgment custody dispute, Robbie's allegations launched three Child Protection Service investigations into Regina's parenting. Except for one incident, all allegations were found to be unsubstantiated. In the one substantiated incident, in which Robbie reported a bite mark on the child's arm, Regina admitted biting the child as a disciplinary measure to teach him not to bite others. The three Child Protection Service reports were admitted into evidence at trial.

Also in evidence at the dissolution trial, which began in February 1986, was a court-ordered custody report in which Susan Searle, at that time a Hennepin County

domestic relations counselor, recommended that Robbie be given sole legal and physical custody. However, at the time of the study, Regina did not ask for custody. At trial, nearly a year after completion of her report, Searle testified that she "would find it difficult to make a recommendation without a new study."

The trial court also heard testimony from the parties, their new partners, and a former neighbor of Regina's. After taking the matter under advisement, the court issued its judgment and decree in which it awarded sole legal and physical custody to Robbie, with visitation to Regina. The findings made no mention of the fact that Regina had been the primary caretaker prior to commencement of the dissolution.

## ISSUE

Did the trial court err in its custody determination when it failed to consider the primary caretaker rule?

## DISCUSSION

Appellate review of a custody determination is "limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). A determination of child custody must be based on the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1984). In evaluating a child's best interests, a court must consider all relevant factors, including those enumerated in § 518.17. *See id.,* § 518.17, subd. 1. These factors "require that, when both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody be awarded to the primary parent absent a showing that that parent is unfit to be the custodian." *Pikula,* 374 N.W.2d at 713.

The trial court erred in failing to apply the primary caretaker rule, which was adopted to protect the best interests of children by preventing custody battles such as this one:

[The] inherent lack of objective standards aside from primary parent status in custody determinations has several related effects which are not in the best interests of children. Imprecision in the application of the law may result in "wrong" results, and in unpredictability of outcome. Parents already estranged may be tempted to use a threatened custody contest strategically when neither parent can predict with any certainty which parent will ultimately be awarded custody. The availability of such strategies cannot in any sense be viewed as in the best interests of the children involved. * * * The rule we fashion today should largely remove the issue of custody from the arena of dispute * * *.

*Id.* at 712–13 (citation omitted).

Justin Rimer, three and a half years old at the time of the trial, was too young to express a preference. *See Pikula* (child of four too young to express a preference). Therefore, the trial court erred in failing to determine which parent was the primary caretaker *at the time the dissolution was commenced.* "Any disruption in the relationships between the children and their parents occasioned by the events leading to the divorce is irrelevant to [the primary caretaker] determination." *Id.* at 714. *Accord Brauer v. Brauer,* 384 N.W.2d 595, 597 (Minn.Ct.App.1986). However, the record clearly shows that Regina Rimer was the primary (often sole) caretaker until January 1985, which was well beyond the April 1983 dissolution commencement.

After identifying the primary caretaker, the trial court should have made a finding as to that parent's fitness:

[W]hen the evidence indicates that both parents would be suitable custodians, the intimacy of the relationship between the primary parent and the child should not be disrupted 'without strong reasons which relate specifically to the [primary] parent's capacity to provide and care for the child.' Awarding custody to the nonprimary parent without such strong reasons, when the primary parent has given

the child good care, may constitute reversible error.

*Pikula,* 374 N.W.2d at 711 (citations omitted). More specifically, "the primary parent should be given custody unless it is shown that the child's physical or emotional health is likely to be endangered or impaired by being placed in the primary parent's custody." *Id.* at 714.

The trial court made no such finding as to Regina's parental fitness. The several findings that could be interpreted as bearing upon the issue do not support the conclusion that she was unfit; in fact, the overall impression is quite favorable toward her. Neither does the record as it exists appear to support a finding of unfitness; of the many allegations of child neglect and abuse, the only one ever substantiated was the bite that Regina admitted she intended as a disciplinary measure to teach the child not to bite. However inappropriate, that alone will not support a finding of unfitness.

■ We therefore hold that Regina Rimer, as the child's primary caretaker prior to commencement of dissolution, must be granted custody absent a strong showing of unfitness. Accordingly, we reverse and remand for a determination of her parental fitness.

The trial court may well believe the taking of further evidence is necessary before a determination of fitness can be made. Remand is appropriate where, as here, neither the trial court nor the parties have had an opportunity to address the carefully defined substantive standards in *Pikula* and where the parties may be able to present additional evidence that may bear on the determination of the primary caretaker's fitness. *See Sefkow v. Sefkow,* 378 N.W.2d 72 (Minn.Ct.App.1985), *pet. for rev. denied* (Jan. 17, 1986).

Regina also appeals on the ground that the trial court made findings unsupported by the evidence. Because none of the disputed findings deals with her parental fitness, we need not reach that issue.

**DECISION**

Reversed and remanded.