**In re the Marriage of Linda Lee REGENSCHEID, petitioner, Appellant,**

v.

**Duane Michael REGENSCHEID, Respondent.**

No. C4–86–838.

Court of Appeals of Minnesota.

Nov. 4, 1986.

Review Denied Dec. 23, 1986.

Ronald L. Moersch, Hvistendahl & Moersch, Northfield, for appellant.

Scott Richardson, Richardson & Richardson, Austin, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ., without oral argument.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a dissolution judgment and decree awarding respondent custody of the parties' two minor children. Appellant claims the trial court abused its discretion in finding neither parent the primary caretaker and awarding respondent custody. We affirm.

## FACTS

Appellant Linda Lee Regenscheid and respondent Duane Michael Regenscheid married on August 12, 1972. They have two young boys, Kurt Joseph Regenscheid, born June 20, 1976, age 9 at the time of trial, and Todd David Regenscheid, born July 23, 1979, age 7 at the time of trial.

Appellant worked two part-time positions until the birth of her first child. At that time, she took a three-month leave and returned to work four days a week as a medical records technician at a hospital in LeSueur. She took another leave of absence after the birth of her second child and returned to her part-time employment. In 1980, the parties moved to Austin, Minnesota where appellant continued to work on a part-time basis. She now commutes to work at a hospital in Northfield, Minnesota.

Respondent worked full time during the course of the marriage. He is currently employed in the Research and Development Department at Geo. A. Hormel & Company in Austin, Minnesota. His position initially involved travel responsibilities, most of which he is now able to delegate due to a recent promotion. In the two and one-half years prior to the custody hearing, he terminated nearly all of his outside activities to spend time with his family.

The parties commenced this dissolution after their separation in July 1985. A temporary custody hearing was held September 30, 1985. On October 8, 1985, the court ordered a custody evaluation and awarded appellant temporary custody. Following two additional motions for change of custody, the court affirmed the temporary custo-

dy award pending final disposition of the issue at a hearing scheduled in March.

Pursuant to the custody evaluation order, Betty Young, a custody investigator of 27 years, prepared a custody investigation report in November 1985. Young recommended custody be awarded to respondent and suggested an updated report be prepared at the end of the school year. Although Young noted both parties provided quality care when the boys were in his or her care, she expressed concern regarding both parents. Her prime concern regarding appellant was her changing employment and living plans. Young also stated she could not disregard appellant's "hysterical-type" reactions exhibited on a number of occasions. Young's primary concern regarding respondent was the amount of travel his work demands and the arrangements he could make for the boys' care. This concern was later diminished due to respondent's promotion and ability to delegate travel responsibilities. In her updated report, Young restated her recommendation custody be awarded to respondent.

On March 19–21, 1986, a hearing was held addressing the sole issue of custody. Several witnesses testified, including the boys' teachers, school principal, extended family and friends. Based on the evidence, the court awarded respondent sole legal and physical custody. Regarding the issue of which parent was the primary caretaker, the court found:

Responsibility for and performance of child care has been shared by both parents. No preference arises from the application of the primary parent test. While the father actively participated, the mother provided more homemaking functions in the nature of cooking, house cleaning, laundering, purchasing clothing and care of clothes. Each of the parents was involved in arranging interaction among the children's peers, arranging babysitting and daycare. The father provided more parenting functions in the nature of assisting the children with school work, discipline, play and recreation, personal one-on-one attention and

comforting. Both parents were involved in the children's school functions. However, the father was more actively involved in appropriately addressing any problems the children were experiencing in school and was cooperative with the school authorities. Recurrent problems have been experienced in the mother's relationship with teachers and school administrators.

The court made detailed findings regarding the factors listed under Minn.Stat. § 518.17, subd. 1(a)–(i) (1984) in determining the best interests of the children. Due to a greater emotional bond between respondent and the boys, the court found respondent better able to address the boys' needs. Regarding the interaction and interrelationship of boys with their parents, factor (c), the court found:

The children each have a stronger personal relationship with their father than with their mother. As the boys have grown older, the father has provided more discipline, schooling assistance, cub scouting assistance, play, personal guidance and comfort than the mother.

Similarly, regarding the parties' capacity and disposition to provide love, affection, guidance, education and religion, factor (h), the court found:

[T]he father has a greater capacity and disposition to provide love, affection, and guidance that the children will need. As the boys have grown older, their relationship with their father has become much more active and involved. As their interests and activities have changed as a result of growing older, the father has been the parent most usually addressing those interests (e.g. scouting, woodworking, computers, outdoor play).

The court's findings also indicate respondent's ability to offer the boys continued stability. Regarding adjustment to home, school, and community, factor (d), the court found:

The father can best offer continued stability to the boys by maintaining their nearly life long association to their home, school and community. * * * [T]he cred-

ible evidence shows that, with custody of the children, [appellant] will most likely move the children from their home, school, friends, community and, to a large extent, their father.

The court stated in its findings similar reasons supporting respondent's ability to provide continued stability regarding the length of time the children have lived in a stable, satisfactory environment and the permanence of the family unit, factors (e) and (f).

## ISSUE

Did the trial court abuse its discretion in finding neither parent the primary caretaker and awarding respondent custody?

## ANALYSIS

1. Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). "The trial court's findings must be sustained unless clearly erroneous." *Id.*

> [W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that the parent is unfit to be the custodian.

*Id.* at 712.

In *Pikula,* the Minnesota Supreme Court adopted various indicia of primary parenthood from *Garska v. McCoy*, 278 S.E.2d 357, 363 (W.Va.1981), to aid trial courts in determining which, if either, parent is the primary caretaker:

> While it is difficult to enumerate all of the factors which will contribute to a conclusion that one or the other parent was the primary caretaker parent, nonetheless, there are certain obvious criteria to which a court must initially look. In establishing which natural or adoptive parent is the primary caretaker, the trial

court shall determine which parent has taken primary responsibility for, *inter alia*, the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. baby-sitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

*Id.* at 713 (quoting *Garska*, 278 S.E.2d at 363).

In the instant case, the trial court found although respondent actively participated, appellant took more responsibility for cooking, cleaning, and laundering clothes. The court stated prior to respondent's job change and the family's move to Austin in 1980, appellant worked 32–40 hours per week outside the home. During this time, respondent shared more heavily in direct care of the children.

The court found the parties shared equally in arranging for social interaction among peers; arranging alternative care of the boys; putting the children to bed and waking them in the morning. With respect to the latter indicia of parenthood—disciplining, educating, and teaching elementary skills—the court specifically found respondent took primary responsibility. Since the court found appellant primary in providing physical care, and respondent primary in providing emotional and intellectual care, the court concluded the parties shared equally in the boys' care and neither parent was primary.

Appellant claims the trial court abused its discretion in determining appellant was not the boys' primary caretaker. She

claims since she fills the role of traditional homemaker, she is the primary caretaker and should be awarded custody.

The indicia of primary parenthood set forth above make plain that a parent who has performed the traditional role of homemaker will *ordinarily* be able to establish primary parent status in a custody proceeding involving younger children.

*Id.* at 714 (emphasis added). The *Pikula* court also stated

that stability is *most often* provided by and through the child's relationship to his or her primary caretaker—the person who provides the child with daily nurturence, care and support.

*Id.* at 711 (emphasis added).

■ We agree, however, with the trial court's finding neither parent is primary. The indicia of primary parenthood are not limited to physical care. The indicia expressly include disciplining, educating and teaching elementary skills, all of which relate to emotional and intellectual care. Moreover, the indicia adopted from *Garska* provide only guidelines and are not exclusive. *Id.* at 713.

■ While ordinarily and most often stability is maintained by the parent providing the most physical care, there is nothing in *Pikula* to suggest stability is not equally maintained by the parent providing the most emotional and intellectual care. The trial court may find respondent primary in providing emotional and intellectual care even though he works outside the home. *Id.* at 714. The strong emotional bonding between respondent and the boys in this case overcomes the presumption the primary caregiver is the parent who provides the most physical care. The court was justified in finding both parents share equally in the boys' overall care and neither parent is primary.

When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness.

*Id.* at 713–14. Inquiring into other indicia of parental fitness, the trial court addressed each factor under Minn.Stat. § 518.17, subd. 1, particularly emphasizing factors (c)-(h):

"The best interests of the child" means all relevant factors to be considered and evaluated by the court including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

(i) The child's cultural background.

Minn.Stat. § 518.17, subd. 1 (1984).

The guiding principle in all custody cases is the best interest of the child. The importance of emotional and psychological stability to the child's sense of security, happiness and adaptation * * * is a postulate embedded in the statutory factors.

*Pikula*, 374 N.W.2d at 711 (citations omitted).

The trial court's findings focused extensively on respondent's ability to offer the boys continued emotional and psychological stability in their home, school and commu-

nity.[1] The record supports the trial court's findings and in awarding respondent custody, the trial court did not abuse its discretion.

We have considered, but decline to grant appellant's request for attorney fees in bringing this appeal.

## DECISION

The trial court did not abuse its discretion in finding neither parent primary and awarding respondent custody of the parties' two minor children. Appellant's request for attorney fees on appeal is denied.

Affirmed.

---

1. In contrast, the court cited specific examples of appellant's inability to offer the boys a stable environment. The court found prior to the separation of the parties, appellant evidenced her own emotional instability through her conflicts with the boys' teachers and school principal, her sister and respondent's parents, and in a shoplifting incident. In addition, the court expressed concern regarding appellant's mismanagement of finances, unduly involving the boys in financial hardship and marital strife. The court concluded "her fitness to parent is sufficiently questioned to award custody to the father. The emotional health of the boys is likely to be impaired and possibly even endangered if custody should be entrusted to the mother." Because we hold the trial court properly found neither parent primary and did not abuse its discretion in awarding respondent custody, we need not review the court's finding of unfitness.