In re the MARRIAGE OF Raymond
Eugene ROSEN, petitioner,
Respondent,

v.

Linda Lee ROSEN, Appellant.

No. C4-86-1231.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Review Denied Feb. 18, 1987.

Lynn J. Starkman, Ronald B. Sieloff, Sieloff & Berman, St. Paul, for respondent.

Kathleen M. Traxler, Judicare of Anoka County, Anoka, for appellant.

Considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ., without oral argument.

## OPINION

LESLIE, Judge.

This appeal is from an order denying a motion for a new trial and other relief in a dissolution action. Appellant Linda Rosen challenges the trial court's award of custody of the parties' three children to respondent Raymond Rosen. She claimed the decree was not justified by the evidence and was contrary to law. Minn.R.Civ.P. 59.-01(7). We remand for findings on the primary caretaker.

## FACTS

The Rosens were married in 1974. They have three children, Chad, age 8, Melanie, 6, and Tammy, 4. There are two children of Linda Rosen's earlier marriage, J.B. and T.B., ages 19 and 16. Neither of the older children was living in the home at the time of trial. The parties separated in October 1983.

Raymond Rosen has been employed for 12 years as a buyer. Linda Rosen has not worked outside the home. She was a traditional homemaker. Raymond testified that he brought the stepchildren to athletic events and school activities, and played with the younger children after work.

Raymond has admitted a longstanding pattern of physically abusive discipline of J.B., the oldest stepchild, for a bed wetting problem. He admitted making him strip and beating him with a belt on several occasions. The frequency and extent of these beatings was in dispute. Linda also testified that J.B.'s head had been pushed into the wall, and that Raymond also gave spankings to T.B.

The other abuse problem in the family was T.B.'s sexual abuse of his stepsister, Melanie. This occurred in the home and was reported by Linda. The probation officer and social worker felt this was an isolated incident and allowed T.B. back into the home. Two weeks after his return, T.B. again abused Melanie when Linda left him with her to babysit. Both incidents occurred after Raymond left the home.

T.B. was placed in a sex offender's program and has not returned to the home. His probation officer stated T.B. would not be allowed back into the home without court approval and supervision. Linda testified that she would not want the boy back in the home until he had completed the program, was well and had approval to return.

Linda Rosen and the Rosen children have received counseling at the Wilder Child Guidance Clinic. Linda brought the children for counseling because of Chad's displays of temper, which she felt were out of control, and the sexual abuse of Melanie. A psychologist, Judy Rothenburg, worked with Melanie and a counselor, John Juaire, worked with Chad and his mother. Rothenburg stated she felt Linda Rosen was managing well, considering the family's problems, and was making good progress in parenting. Juaire testified that Chad had made good progress and completed counseling. His initial impression was that Linda Rosen was overwhelmed with Chad's behavior.

A custody evaluation was done. MMPI tests indicated each parent had a passive dependent personality, with a great deal of anger. Based on home visits and office interviews, the evaluator felt both parents had difficulty being effective parents. She felt Linda was at times overwhelmed by the children, but that this was appropriate given the family's problems. She felt Raymond was frustrated in dealing with the children, and recommended parenting classes for both parents.

The evaluator also found a history of alcoholism and abuse in Raymond's family, and saw an "extremely high risk" of his repeating the abuse of his stepchildren with the other children. She recommended that Linda Rosen have custody of the children.

A psychologist, Dr. Ralph Underwager, testified for Raymond Rosen after conducting an assessment of Raymond and the children. He described Raymond as an introverted personality with a normal MMPI. He described Chad as perceiving the world as a "jungle," in which he was powerless and his father could provide protection. He did not interview Linda Rosen.

Underwager stated that Raymond's abuse of his stepchild arose from difficulties in establishing his role with his stepchildren. He testified Raymond was no more likely to abuse his own children than any normal parent. Raymond had completed the first phase of domestic abuse counseling, but did not finish Phase II because he took his children camping.

The trial court made extensive findings, but made no finding on who had been the primary caretaker. The court awarded custody to Raymond under the statutory "best interests" standard. Minn.Stat. § 518.17, subd. 1(a)-(i) (1986). The decision in *Pikula v. Pikula,* 374 N.W.2d 705 (Minn. 1985) came out shortly after trial, and was cited to the court in Linda's trial memorandum and post-trial motion. Raymond moved for additional findings, requesting either a finding that the parties were equal caretakers, or a finding that Linda Rosen is an unfit parent. The trial court made additional findings, but made no finding on primary caretaker or unfitness of either party.

## ISSUE

Was the trial court's custody determination unsupported by the evidence or contrary to law?

## DISCUSSION

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by

improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

The supreme court in *Pikula* established the primary caretaker preference. Raymond claims he was at least equally responsible for taking care of the children. The trial court made no finding on which parent, if either, was the primary caretaker; nor did it find either parent unfit.

The *Pikula* court noted:

When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises * *.

374 N.W.2d at 713–14. Raymond testified he had assumed a number of child care duties in the evenings and on weekends. Most involved recreation, however, and many involved the older stepchildren.

Working parents have been found to be primary or equal caretakers in a number of cases, even though the spouse has been a traditional homemaker. In *Pekarek v. Pekarek*, 384 N.W.2d 493 (Minn.Ct.App. 1986), an equal parenting situation was found where the father claimed to have cooked meals, washed dishes, done laundry, transported the children (ages 9 to 12) to activities and shared an equal role in "babysitting." *Id.* at 496. The mother had lost her job at some point in the marriage. *Id.*

In *Regenscheid v. Regenscheid*, 395 N.W.2d 375 (Minn.Ct.App.1986), this court affirmed an award of custody to a father who testified he provided help with school work, discipline, recreation and arranging day care and babysitting. The trial court found neither parent's care primary and awarded custody to the father. This court stated:

While ordinarily and most often stability is maintained by the parent providing the most physical care, there is nothing in *Pikula* to suggest stability is not equally maintained by the parent providing the most emotional and intellectual care.

*Id.* at 379.

In *Sefkow v. Sefkow*, 378 N.W.2d 72 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Jan. 17, 1986), the trial court had found an equal parenting situation where the wife worked part-time and the husband did the morning bathing, dressing, feeding and dropping off at the babysitter. This court at first reversed, *Sefkow v. Sefkow*, 372 N.W.2d 37 (Minn.Ct.App.1985), finding the mother was the primary parent. On remand, we remanded for a determination of the primary caretaker in light of the *Pikula* standards. 378 N.W.2d at 77.

Here, as in *Sefkow*, the parties did not have an opportunity to present evidence bearing on the highly specific criteria in *Pikula*. See *Sefkow*, 378 N.W.2d at 77. The record reveals only that Linda Rosen was a traditional homemaker, and Raymond claimed relatively few child care duties. *Cf. Jorschumb v. Jorschumb*, 390 N.W.2d 806, 809, 810–11 (Minn.Ct.App. 1986) (co-parenting found where father spent 2–3 hours daily with the child, and took responsibility for grooming, disciplining and toilet-training).

On this record, Raymond has not presented evidence sufficient to support a finding that he was the primary, or an equal, caretaker for the children. Similarly, while we could reverse and award custody to Linda, there is no evidence of the specific caretaking duties identified in *Pikula*. Although *Pikula* indicates a traditional homemaker "will ordinarily be able to establish primary parent status," 374 N.W.2d at 714, it does not establish a presumption dispensing with specific evidence of parental duties.

Raymond has made a motion for attorney's fees, alleging this appeal is frivolous. This motion is denied. The appeal is plainly meritorious.

### DECISION

The trial court erred in determining custody of the children without a finding on the primary caretaker. This determination is vacated and remanded for further evidence and consideration under the *Pikula*

standard. Raymond's motion for attorney's fees is denied.

Remanded.