In re the Marriage of Susan K. **SHEERAN**, Petitioner, Appellant,

v.

Thomas A. **SHEERAN**, Respondent.

No. C9–86–1614.

Court of Appeals of Minnesota.

Feb. 24, 1987.

John H. McLoone, IV, McLoone Law Office, Waseca, for appellant.

Michael A. Zimmer, Patton, Hoversten, Berg & Zimmer, P.A., Waseca, for respondent.

Considered and decided by PARKER, P.J., HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

In this dissolution of marriage proceeding the trial court granted physical custody of the parties' three sons to respondent Thomas Sheeran. Susan Sheeran appeals, arguing (1) that the trial court abused its discretion in granting custody; (2) that the trial court failed to maintain impartiality; (3) that the trial court improperly excluded rebuttal testimony; and (4) that the trial court abused its discretion in failing to order an updated custody study, appointment of a guardian ad litem and interviews of the children. We affirm.

## FACTS

The parties were married on August 30, 1974. On June 11, 1984, appellant moved out of the family home, taking the parties' three sons with her. At the time, the children were ages seven, six and four. She did not tell respondent of her plans and did not allow the children to contact him at the time the move was being made. She re-

tained custody, and by court order of August 1, 1985, was granted temporary custody. At trial, both parties sought physical custody. All issues on appeal relate to the trial court's order granting physical custody to respondent.

During the years prior to the separation, the family lived in four different communities. Appellant worked during portions of that time, generally during the evening or night hours. Respondent worked day-time hours. In 1979–81, respondent was unable to work for approximately 12 months due to a back injury and was at home during that time. For the two years immediately prior to the separation, the family lived in Wabasso and respondent worked from 8 a.m. to 2 p.m. Appellant worked an alternating schedule. One week she would work two weekday evenings from 5 to 9 p.m. and from 1 to 4 p.m. on Saturday and Sunday. The next week she worked three weekday evenings from 5 to 9 p.m.

Following the separation, appellant moved to Janesville and returned to school on a full-time basis. She also worked part-time and hired babysitters to care for the children while they were in her custody. She plans to obtain her teaching credentials in the spring or summer of 1987 and indicated that she may have to relocate in order to do her student teaching or to find employment.

At trial, a welfare worker and a social worker testified that the children preferred to live with respondent. Testimony also indicated that respondent had an exceptionally close relationship with his sons. Although appellant's affidavit in support of her motion for temporary custody refers to incidents of physical abuse by respondent, she stated at trial that there had been no such incidents.

The court concluded that both parties were fit to have custody and that neither parent had served as the primary caretaker prior to the separation. After considering the factors listed in Minn.Stat. § 518.17, subd. 1 (1984), the court granted joint legal custody to the parties and determined that it was in the children's best interest to grant physical custody to respondent, with

appellant having liberal visitation rights, including extended summer visitation.

Appellant's motion for a new trial was denied and she appeals the physical custody determination.

## ISSUES

1. Did the trial court abuse its discretion in finding neither parent the primary caretaker and awarding custody to respondent?

2. Did the trial court fail to maintain impartiality?

3. Did the trial court abuse its discretion by prohibiting rebuttal testimony by an expert witness?

4. Did the trial court abuse its discretion in failing to order an updated custody study, appointment of a guardian ad litem and interviews of the children?

## ANALYSIS

### I.

■ In custody determinations, appellate review is limited to determining whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). The findings must be sustained unless clearly erroneous. *Id.*

The trial court considered application of the primary caretaker doctrine outlined in the *Pikula* decision:

[W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Id.* at 712. However, after reviewing the indicia of primary parenthood contained in the *Pikula* decision, the trial court concluded that neither parent served as the primary caretaker.

■ The court found that the parties shared equally in preparing and planning meals; providing medical care; arranging for social interaction among peers after

school; educating the children; and teaching elementary skills. The court also found that bathing the children was primarily done by respondent, while both parents shared in grooming and dressing the children. Appellant was primarily responsible for purchasing, cleaning and caring for clothing, and respondent was responsible for arranging babysitting. The court found that putting the children to bed at night was a shared responsibility but that attending at night and waking the children in the morning was primarily appellant's responsibility. Finally, the court also found that respondent was primarily responsible for disciplining the oldest child, while appellant disciplined the two younger children.

Testimony from respondent and two expert witnesses supports the findings. Appellant's testimony contradicts the findings and indicates that she was primarily responsible for all areas of care. However, the trial court specifically addressed two incidents relating to appellant's credibility, undermining her testimony. First, she had testified that the children were not upset after being told that they were moving from the family home. Others who were present when appellant told the children of her plans and two expert witnesses testified that the children were very upset. Second, appellant's affidavit in support of a motion for temporary custody claimed respondent had physically abused her and the children. At trial, she admitted there had been no abuse. The trial court's broad discretion in custody determinations stems in part from the fact that the court has the opportunity to view the parties and determine their credibility. *Ebnet v. Ebnet,* 347 N.W.2d 840, 842 (Minn.Ct.App.1984). The trial court acted within its discretion in evaluating appellant's testimony. The record supports the trial court's findings regarding primary caretaker.

Also, there is testimony to the effect that respondent had an exceptionally close relationship with his sons prior to the separation, and was active in providing emotional

and intellectual care for them even though he works outside the home. *Regenscheid v. Regenscheid,* 395 N.W.2d 375 (Minn.Ct. App.), *pet. for rev. denied,* (Minn. Dec. 23, 1986). As this court stated in *Regenscheid:*

> The strong emotional bonding between respondent and the boys in this case overcomes the presumption the primary caregiver is the parent who provides the most physical care. The court was justified in finding both parents share equally in the boys' overall care and neither parent is primary.

*Id.* at 379.

After concluding that neither parent was the primary caretaker, the court considered the factors contained in Minn.Stat. § 518.-17, subd. 1 (1984) in discussing the best interests of the children. *Jorschumb v. Jorschumb,* 390 N.W.2d 806, 812 (Minn.Ct. App.), *pet. for rev. denied,* (Minn. Aug. 17, 1986). Based on this consideration, physical custody was granted to respondent.[1]

Appellant argues that the parties' schedules make it impossible to conclude that respondent shared equally in caring for the children. For the two years prior to the separation, he worked from 8 a.m. to 2 p.m., while appellant worked two or three weekday evenings and afternoons and every other weekend. The schedules do not indicate that the court erred in finding that respondent shared equally in parenting responsibilities. He was able to be with the children during the afternoon and evening hours and on weekends. The evidence supports the court's findings.

Appellant also argues that the court penalized her for having assumed the role of a traditional homemaker by finding that her position following the separation is not as secure as that of respondent. In applying the factors of Minn.Stat. § 518.17, the court considered the permanence of the existing or proposed custodial unit. The court noted that appellant does not know where she will do her student teaching or whether she will have to relocate to find employment as a teacher. We are not insensitive to the fact that the parties' sepa-

---

1. We note with approval the incisive and thorough analysis of the section 518.17, subd. 1 factors completed by the court in reaching its decision.

ration may have precipitated appellant's return to school, that her educational endeavors have yet to be completed, and that permanent employment arrangements are, of necessity, yet to be finalized. However, the court's determinations relate to permanency of residency for the minor children. We do not construe them as penalizing the traditional homemaker.

Further, the court granted appellant extended visitation during the summer because her work schedule as a teacher will coincide with the children's schedule. Again, this does not appear to be a penalty imposed on the basis of appellant's role as a traditional homemaker, but rather from the desire to assure that appellant and the minor children will all benefit from the extended time they may spend together during the months when appellant has no teaching duties.

The court did make reference to the fact that while in appellant's temporary custody, the children have had as many as 31 different babysitters, that appellant is often away from home attending school or working part-time, and that she has had difficulty in disciplining the children. The problems with providing babysitters and discipline do not relate to appellant's situation in making a transition from her role as homemaker to her position as a teaching professional, but rather to her response to that situation. The brief mention of appellant's absence from the home does not appear to have been a significant factor in the court's decision.

There is evidence to support the court's findings, they are not clearly erroneous, and the court did not abuse its discretion in granting physical custody to respondent.

## II.

■ Appellant refers to one portion of the transcript, claiming that the court failed to maintain its impartiality. In that portion, the court questioned appellant in regard to whether she communicated with either the children or respondent about the move to Janesville and in regard to the parties' communication generally. The specific colloquy on general communication was as follows:

> THE COURT: I think perhaps that both of you should, maybe instead of assuming what somebody else thinks or assuming the other one thinks, ask them or tell them.
>
> [APPELLANT]: We had a lot of problems talking to each other.
>
> THE COURT: I don't suppose—when was the last time either one—when was the last time you told your husband you loved him?
>
> [APPELLANT]: That was easier to communicate than anything else.
>
> THE COURT: Answer my question.

Appellant argues that such interrogation was improper and demonstrated bias on the part of the trial court. We cannot agree.

■ It is within the discretion of the trial court to question a witness called by a party. *Olson v. Blue Cross and Blue Shield,* 269 N.W.2d 697, 702 (Minn.1978). In the course of this four-day trial, we cannot conclude that one incident of questioning constituted an abuse of discretion. As the trial court explained in responding to appellant's allegations in her motion for a new trial:

> [Appellant] * * * made reference to an angry remark allegedly made by the Court while [she] was on the stand. [She] contends that the remark was directed at [her]. The Court maintains that any such remark that may have been made was directed at both parties, as they were both being uncooperative.

We believe that the court's interpretation of the exchange between it and appellant is supported by the record. The court's questioning of appellant does not evidence any failure of impartiality resulting in appellant's detriment.

## III.

Appellant called as a rebuttal witness Dr. VanBuskirk, who had interviewed the minor children and appellant and was prepared to testify that appellant was the primary caregiver. The court permitted Dr. VanBuskirk to testify, but limited his testimony to rebuttal matters, stating:

Dr. VanBuskirk, in rebuttal, can testify as to the methodology used by [expert witnesses] Dr. Scurry or Sister Fernholz or both and that would be proper rebuttal. Testimony from Dr. VanBuskirk having to do with interviews with the children, interviews with [appellant], appear to the Court to be new testimony; therefore, properly part of a case in chief. So, questions—those questions are not proper rebuttal and the objection as to those questions is sustained.

Subsequently appellant made a lengthy offer of proof, arguing in pertinent part:

[VanBuskirk] would testify that the family characterization by [the oldest minor child] * * * is that his father likes to go to church, is good at fixing things, yells, is scary and swears. That [the oldest minor child's] characterization of his mother is as follows. Listens real good, is nice to my friends, knows what I like, gives warm hugs, helps me learn, reads to me, shops for me, takes me to meetings, goes to the doctor with me, takes me to the dentist, does lots of laundry, washes dishes, speaks softly, is just like a teacher, talks to teachers after school, I love.

* * * [VanBuskirk] would also explain that the primary caretaker for [the oldest minor child] before and after separation has been and is [appellant]. * * * [T]he family characterization by [middle minor child] in reference to [respondent] is * * [k]nows what I like, good at fixing things, uses big belts, is like a policeman, spanks. * * * [and] in reference to [appellant], is * * * [g]ives me warm hugs, wakes me up, reads to me, helps me to get dressed, washes face gently, takes me to my friends, takes me to meetings, goes to the doctor with me, takes me to the dentist, cooks good food, does lots of laundry, washes dishes, sings nicely, likes dresses, is just like a teacher, I love. * * * [T]hat the primary caretaker before and after separation has been and is now [appellant].

* * * [T]he family characterization by [the youngest minor child] of [respondent] is * * * [g]ood at fixing things, scary, spanks, often late. * * * in refer-

ence to [appellant] is * * * [k]nows what I like, gives warm hugs, helps me relax, helps me learn, wakes me up, reads to me, washes face gently, shops for me, takes me to my friends, takes me to the dentist, cooks good food, vacuums carefully, does lots of laundry, washes dishes, sings nicely, has smooth hands, knows how to comb hair, is just like a teacher, I love * * *.

\*     \*     \*     \*     \*     \*

[T]hat the primary caretaker before and after the separation has been and is now still [appellant].

■ While the trial court's treatment of Dr. VanBuskirk's testimony was technically limiting, it did not result in prejudice to appellant. The trier of fact was apprised at length regarding the substance of the proposed testimony. We deem the limitations imposed on that testimony to be within the broad discretion granted to the trial court in such matters. *Briggs v. Chicago Great Western Railway Co.*, 248 Minn. 418, 427, 80 N.W.2d 625, 633 (1957).

### IV.

■ Whether to order a custody study is within the trial court's discretion, as is appointment of a guardian ad litem. *Meyer v. Meyer*, 375 N.W.2d 820, 826–27 (Minn. Ct.App.), *pet. for rev. denied*, (Minn. Dec. 30, 1985). Conducting interviews of the children is also within the court's discretion. *Madgett v. Madgett*, 360 N.W.2d 411, 413 (Minn.Ct.App.1985). Appellant contends that the court abused its discretion in failing to take any of these three actions.

■ The court addressed these items in denying the motion for a new trial:

[T]he Court cannot recall a specific request for a new custody study during the course of the trial and if such a request were made, it was not actively pursued by [appellant].

* * * [T]he Court did not find it necessary to appoint a guardian ad litem for the children. There was no reason for [appellant] to want a guardian ad litem during the trial because the children

were in [her] custody during the course of the trial.

* * * [T]he Court determined that an interview of the children would not be beneficial; they had already been interviewed by several people. An interview by the Court would not have been helpful because the other people that interviewed the children could testify to their wishes and such interviews were conducted under circumstances less stressful to the children.

We must conclude that the court's decisions regarding a custody study, appointment of a guardian ad litem, and interview with the minor children were within the extremely broad discretion granted to it.

## DECISION

The trial court did not abuse its discretion in granting custody to respondent, in limiting expert witness testimony, or in declining to order a custody study, appointment of a guardian ad litem or interviews of the children. There is no showing that the court failed to maintain impartiality.

Affirmed.