LAWRENCE McDERMOTT v. RUTH McDERMOTT.[1]

June 8, 1934.

No. 29,865.

[1]Reported in 255 N. W. 247.

*J. A. Cashel* and *Canfield & Michael,* for appellant.

There was no appearance made or brief filed on behalf of respondent in this court.

*I. M. OLSEN, Justice.*

Ruth McDermott, herein referred to as defendant, appeals from an order granting a partial custody of her minor child to her divorced husband.

Lawrence McDermott, herein referred to as plaintiff, brought suit for divorce against his wife, Ruth McDermott. The defendant, by cross-complaint, asked for a divorce from plaintiff on the ground of cruel and inhuman treatment. There was one child, the issue of the marriage, a boy aged about three years at the time of the trial of the action in September, 1932. The court submitted six questions of fact to a jury. The answers thereto by the jury were, in substance, as follows:

(1) That the defendant was not guilty of any cruel and inhuman treatment of the plaintiff.

(2) That the plaintiff was guilty of cruel and inhuman treatment of the defendant during the time they were living together as husband and wife.

(3) That the plaintiff was not a fit and suitable person to have the custody of the child.

(4) That the home of William McDermott, where plaintiff proposed to keep the child, was not a fit and suitable place for the child.

(5) That the defendant was a fit and suitable person to have the custody of the child.

(6) That the home of Al Gertz, where defendant proposed to keep the child, was not a fit and suitable place for the child.

The two homes above referred to, we infer, were the homes of the parents of the respective parties.

The court thereupon made findings of fact in accord with the findings of the jury and, as conclusions of law therefrom, adjudged that the defendant was entitled to an absolute divorce from the plaintiff and was entitled to have the care, custody, and control of the child but, in connection with such care and custody of the child, provided that plaintiff might take the child to his home, or the home of his parents, once each month and there keep the child from Saturday until the following Monday, and that defendant be entitled to take the child to the home of her parents and keep the child there as frequently and for such periods of time as the plaintiff keeps the child in his home or in the home of his parents. The court further found that the home of Mr. and Mrs. Thomas Bonnett was a fit and proper place to raise the child, and designated said home as the home where the child was to be raised principally until the further order of the court, and that the defendant have the care, custody, and control of the child in said home. These unusual provisions practically made this young child a wanderer from home to home, among four different homes, two of which had been found unsuitable by the jury.

The court awarded to the defendant the sum of $50 for attorneys' fees and the sum of $200 for permanent alimony, this alimony to be paid in semi-annual instalments of $50 each, the first payment to be made January 1, 1933. It further provided that plaintiff pay to defendant the sum of $15 per month for the support of the child, the first payment to be made October 1, 1932.

Between the time the order and decree above recited were made in September, 1932, and the order now appealed from was made on October 12, 1933, a number of motions and orders were made in reference to payments on which plaintiff was in default. On one occasion he was found guilty of contempt. The court granted a number of modifications extending the times of payment, and reduced the amount of support money for the child to $12 per month.

On October 12, 1933, on hearing on an order to show cause obtained by plaintiff, the court, on plaintiff's motion, made an order modifying the order and decree as to custody of the child by providing that, until the further order of the court, the plaintiff "may

have the custody" of the child for one week in each month, beginning with the month of December, 1933, said week to commence on the first Sunday of each month and end on the following Saturday,. conditioned upon the continued prompt payment of the sums called for by previous orders. At the time of this order plaintiff had paid no part of the small alimony awarded and had paid only one-half of the $50 attorneys' fee. The order was made on the affidavit of the plaintiff. There were counter affidavits on behalf of the defendant, later to be noted. We have searched plaintiff's affidavit in vain for any cause or showing which would entitle him to the custody or care of this child for any period of time. He does not state that he has any home or any place to keep or care for this child or any means for its care or support. We may infer that, if permitted to take the child, he will take it to the home of his parents as he has done on some prior occasions over Sunday, under the order or decree originally made. Defendant, by her own affidavit and those of three disinterested women who were well qualified to testify as to her care of the child and as to the effect on the child of its visits to the plaintiff at the home of his parents, clearly shows that she has a good home for the child and that it has excellent care and support. These affidavits further show that the visits of the child to the home of the plaintiff's parents over Sunday once a month have always upset the child and been detrimental to its well-being; that, on the return from such visits, the child has been disobedient and unruly and has stated that he has been told by the people with whom he has visited that his mother was a bad woman and that he did not have to mind her. These affidavits were not controverted.

We are dealing here with the question of the custody of a young child. Defendant resides at Worthington. She is employed in a law office for some six hours each week day. She has comfortable living quarters and employs a maid to care for the child while she works in the office. She has time off at noon and goes home for the noon lunch each day. Plaintiff lives at Luverne. To transport this child back and forth between the two towns, summer and winter, once each month, have it encounter different home conditions,

and be surrounded by influences clearly shown to be hostile to the mother, should not be allowed.

There are exceptional cases where divided custody of a young child may be proper, but this is a case where it is shown otherwise.

As a general rule divided custody of such a child is not for its best interest; and, if the mother is a fit and proper person and able to and does properly care for the child, she should have its custody and care. Eberhart v. Eberhart, 149 Minn. 192, 183 N. W. 140; Larson v. Larson, 176 Minn. 490, 223 N. W. 789; Rice v. Rice, 181 Minn. 176, 231 N. W. 795; State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329.

There should be here an end to the disturbances of this child and mother by the shifting of the child back and forth between the two homes, and an end to repeated motions and court proceedings in reference to the child's custody. As long as the mother is able to and does properly care for the child, she should be left in undisturbed custody.

The order appealed from is reversed and the matter remanded to the trial court with directions to amend its original order so as to give the mother the unqualified custody and control of this child, with the provision that plaintiff may see and visit the child in the mother's home once each month at a suitable hour of the day, to suit the convenience of the mother.

Reversed and remanded.