**In re the Marriage of Tran Thi Ngoc JOHNSON, a.k.a. Tran Thi Ngoc Smith, Petitioner, Appellant,**

v.

**Bruce E. SMITH, Respondent.**

**No. C0–85–678.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Review Denied Nov. 18, 1985.

Lionel H. Peabody, Duluth, for petitioner, appellant.

Forrest Hutchinson, Duluth, for respondent.

Robert C. Huseby, Duluth, Guardian ad litem for Tran Ngoc Dung Christ Smith.

Heard, considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

CRIPPEN, Judge.

When the marriage of the parties was dissolved in 1976, custody of the four year old son of the parties was placed with his mother. Eight years later the boy's father moved for a change of custody. The trial court granted the motion and the mother appealed. We reverse.

### FACTS

Chris Smith, whose full given name is Tran Ngoc Dung Christ, was born in April 1972. His parents were married at Saigon, Vietnam, one month later.

The marriage of the parties was dissolved in 1976 in Lake County. Custody of their son was placed with appellant, the child's mother. The court gave respondent visitation rights of two weekends each month, plus one summer month, and he was ordered to pay child support of $125 per month.

In 1978, appellant married Jim Michael Johnson. The couple has three children, twin sons born in 1979 and a daughter born in 1981. This marriage was dissolved in November 1983. Chris Smith enjoyed a close relationship with Jim Johnson and continues to see him regularly. The two attend movies and sporting events. Chris also gets along well with his young brothers and sister.

Early in 1983, respondent had disputes with his former wife about visitation arrangements. There is no evidence of custody or visitation problems in the preceding six years. Respondent made few visits with the child during the first two years after the dissolution.

The parties resolved their visitation dispute, which involved weekend visits early in 1983. Respondent contended he was denied visits for several weekends. Appellant testified that visits conflicted with the child's team sports activities and that she was upset with respondent because he did not return the child promptly. In July 1983, the parties stipulated to a new visitation arrangement. Except for a dispute on

one occasion in February 1984, there is no evidence of visitation problems after the stipulation was concluded.

In June 1983, respondent gave notice of a motion for change of custody of the child, or for expanded visitation contacts. He claimed appellant had denied his visitation rights earlier in the year. He also stated that the child had said his mother struck him on occasion, and he reported having observed appellant inappropriately swearing and yelling about the child's behavior. He claimed appellant's care of the child had deteriorated in recent months.

An evidentiary hearing on respondent's motion was conducted in September 1984, after social investigations were completed. In December, the trial court ordered a change of custody, finding that the child's well-being was endangered and that this factor outweighed any harm that a custody modification may cause to the child due to a change of custody. This appeal is from the amended child custody judgment.

## ISSUE

Is there sufficient evidence to sustain the trial court's custody modification findings?

## ANALYSIS

### 1.

■ Custody modifications are prohibited in Minnesota unless circumstances of the child or the custodial parent have changed since the prior order and "modification is necessary to serve the best interests of the child." Minn.Stat. § 518.18(d) (1984).

■ More particularly, absent the consent of the custodial parent, custody must remain unchanged unless the child is in danger and the benefit of change is greater than the advantage of maintaining continuity. The controlling statute provides:

[T]he court shall retain the custodian established by the prior order unless * * * (iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d).

■ We will affirm a child custody decision so long as it is not arbitrary. *Hansen v. Hansen*, 284 Minn. 1, 5, 169 N.W.2d 12, 14 (1969). Trial court findings must be upheld if they are not clearly erroneous. Minn.R.Civ.P. 52.01. In examining the evidence, we must view it in the light most favorable to the trial court's findings. *Hansen*, 284 Minn. 1, 5, 169 N.W.2d at 15.

### 2.

The trial court found that "the child's present environment does endanger his physical and emotional well-being." Related findings noted "assaults" on the child, interference by appellant with visitation, deterioration of the child's relationship with his mother, leading to "clashes" between them, and the need of the child at age twelve for a "consistent rational method of discipline and parental control."

The trial court also found that "the advantages to be derived from the change of custody outweighs any harm to the child occasioned by such change." The court noted that the child has a good relationship with respondent and his wife, and that respondent could provide a "fit and proper environment" for the child. The court also found that the child had expressed a preference to be in respondent's custody.

The trial court found that appellant lived in a home "physically adequate" for the child, and that the boy had expressed "some concern as to his relationship with his half-siblings continuing." No other specific findings dealt with "harm to the child occasioned by such change."

We conclude that the trial court clearly erred in assessing danger to the child and arbitrarily discounted the harm in taking a twelve year old child from the custodial parent he has been with for eight years.

### 3.

▮ In a memorandum filed with its order, the trial court indicated that its findings on "physical assaults" were the primary rationale for an ultimate finding that the child was in danger. In fact, other reasons for the finding are not legally significant. Minn.Stat. § 518.18(d)(iii). A finding that the well-being of the child is endangered is inadequately supported by the findings of visitation problems, a deterioration of the mother-son relationship, and the special disciplinary needs of a twelve year old boy.

▮ Before reviewing evidence of inappropriate physical discipline of the child, we note that the evidence is insufficient to sustain findings of the child's disciplinary needs and the deterioration of the child's relationship with his mother. In addition, the evidence shows that the visitation problems of these parents are not chargeable solely to appellant, and they are largely insignificant and currently nonexistent. More needs to be said relating to the child's relationship with his mother.

It is undisputed that the child loves his parents, that he is presently happy and well adjusted, and he is easy-going and well mannered. He is a very good boy, who is bright and articulate, with a high academic record and a reputation for good conduct in school. He greatly enjoys playing hockey and baseball, and his mother supports him by encouraging these activities and attending games he plays. Jim Johnson continues to support the boy's athletic activity.

There is no evidence to show that the relationship of the boy with his mother is any different now than at any other time in his life. As to the subject of discipline, the record shows a social worker warned the mother against use of physical discipline after the father reported his complaint on the subject, and there is no evidence to contradict her testimony that she tries now to discipline the child by grounding him. There is no evidence that the child engages in clashing or fighting with his mother. The evidence indicates only that he has been disciplined.

▮ We have examined the evidence of physical discipline and conclude that it is clear error to view it as evidence the child's health or development is endangered. In its memorandum, the trial court observed:

> The Court is fully cognizant of the statute setting forth the authorized use of force as it affects a parent and child.[1] In this instance it is clear that the [appellant] has exceeded those boundaries and does so on a consistent basis.

Memorandum at 2 (footnote added). The evidence does not sustain this observation.

There is direct evidence that the boy has been slapped once or twice and that he has been spanked on the buttocks with a wooden spoon at least once. In one slapping incident, the mother either "slapped" or "struck" the boy on his face. The father once remarked that the child said he was repeatedly slapped. There is evidence the boy had a substantial bump on his forehead from being pushed into a door, but the boy said this push was accidental and a social worker found the bump "almost imperceptible" two days after the father reported the incident. There is evidence the boy was once hit on the arm with a broomstick and was once hit on the back with a fist. The father reports that the mother's discipline includes swearing and name calling, and his testimony that she screams and hollers is corroborated. The child told a social worker his mother often gets mad.

The father testified that he thought after one incident the boy had a bruise on his arm and he appeared "shook up." Other than this observation, and the evidence of a bump, there is no evidence the child has been hurt, physically or emotionally. The boy has no fear of his mother. Further,

---

1. In its relevant part, the statute provides:

   Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist:

   \*       \*       \*       \*       \*       \*

   (6) When used by a parent \* \* \* of a child \* \* \* to restrain or correct such child. \* \* \*
   Minn.Stat. § 609.06 (1984).

three witnesses—the child's guardian ad litem, a child abuse investigator, and the author of a comprehensive social report—interviewed the boy and testified that he was not in danger.

■ The law does not condone injury of children, nor will it accommodate danger for children. Here, however, there is no competent evidence of unlawful child abuse or that the child's health or development is endangered.

4.

Even more importantly, we conclude here that the evidence does not show that the benefits the child will realize from a change of custody are such that the trial court could find them greater than the advantage of maintaining the custodial placement the child has enjoyed since he was four years old.

As stated by the Minnesota Supreme Court, judicial power to modify custodial arrangements is limited for policy reasons:

> [It is desirable] to maintain the child in the family unit to which he or she currently belongs, and minimize judicial interference with decisions which affect that family unit.

*Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983). The court added:

> Given the inadequacy of judicial determinations as to the best interests of the child, and given that one of the few guidelines we have is the fact that continuity and stability in relationships are important for the child, courts should be restricted in their authority to interfere with post-divorce family-unit decision-making. Decisions concerning the welfare of the child should be left to the custodial parent who, by virtue of his or her relationship with the child, is best-equipped to determine the child's needs. The custodial parent should be permitted to decide where he or she and the child will reside, and that decision should be second-guessed only where it would present a "clear danger to the child's well-being."

*Id.* (quoting Note, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel,* 12 Rutgers L.J. 341, 363 (1981) (footnote omitted)).

In *Auge,* the supreme court upheld a preference for permitting the relocation of a custodial parent and a child and found its holding to be "grounded in Minnesota's statutory scheme." *Auge,* 334 N.W.2d at 399. That scheme includes the provisions of Minn.Stat. § 518.18(d), which requires that the court carefully measure the harm likely to be caused by modifying custody. It involves Minn.Stat. § 518.176, subd. 1 (1984), establishing the authority of the custodial parent to determine the child's upbringing. It includes Minn.Stat. § 518.-17, subd. 1(e), which states the desirability of stability and continuity.

As already reviewed, undisputed evidence indicates that this case involves a bright, happy child, and the adjustment of the child cannot be explained without regard for his family situation during the last eight years. The proposed change takes the child to a different home and a different school and community. It is arbitrary to sacrifice that custodial environment without great caution.

The benefits of a change of custody include relief from physical discipline, and we previously reviewed the exaggeration of that factor. There is little other evidence that the child's circumstances would be improved by moving him to his father's home; the child has two caring, able parents. A custody change would imperil the child's significant interest in sports activities. Respondent disapproves of team sports, and although he assures his son he would transport him to events, respondent says he would not attend the events or otherwise encourage them. The child's guardian ad litem reported that respondent seemed to be emotionally more stable than appellant, but he concluded there was inadequate basis for a change of custody.

■ The trial court relied in part on the express preference of the child to live with his father. The child's choice is a significant consideration in assessing his

best interests. Minn.Stat. § 518.17, subd. 1(b). The child here could not be induced to express a preference to his guardian ad litem. He told the investigating social worker he liked being at both parental homes and wanted to spend more time at his father's home. When privately interviewed by the trial court, the child reluctantly observed a feeling that it would be better for him to be with his father, but the question consistently brought an ambivalent response. While this factor deserved attention, it was error to find the reluctant and ambivalent expression, together with other potential benefits for change, more weighty than the harm caused by being moved from an eight year placement.

### 5.

Because we have decided a custody modification was not sufficiently supported by the evidence, we find it unnecessary to address appellant's contention that respondent's motion was improper because of a motion for similar relief made several months earlier. *See* Minn.Stat. § 518.18(b).

### DECISION

The trial court's decision to modify a long-term custody placement was arbitrary.

Reversed.