In re the Marriage of Robert J. SEFKOW, petitioner, Respondent,

v.

Paula D. SEFKOW, Appellant.

No. C0-84-2100.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Review Denied Jan. 17, 1986.

Charles R. Kennedy, Sally Ireland Robertson, Wadena, for respondent.

Randolph E. Stefanson, Moorhead, for appellant.

Heard, considered and decided by LANSING, P.J., and LESLIE and CRIPPEN, J.

**OPINION**

CRIPPEN, Judge.

Our decision in this case was announced in an opinion filed July 30, 1985. *See Sefkow v. Sefkow*, 372 N.W.2d 37 (Minn.Ct. App.1985). The decision included a reversal and modification of the trial court's custody decision, which had given physical custody of the parties' older child to respondent. We granted physical custody of this child to appellant, who already had been given custody of the parties' younger child.

Subsequent to the filing of our decision, respondent requested further review by the supreme court. *See* Minn.R.Civ.App.P. 117; Minn.Stat. § 480A.10, subd. 1 (1984). While the request for review was pending, the Minnesota Supreme Court decided *Pikula v. Pikula*, 374 N.W.2d 705 (Minn. 1985). On October 18, 1985, 374 N.W.2d 733, the Supreme Court remanded the present case to us for reconsideration in light of *Pikula*.

We alter our initial custody decision, remanding the proceedings to the trial court on the issue of physical custody of the older child of the parties.

**FACTS**

The facts are presented in detail in our initial decision. *See Sefkow*, 372 N.W.2d at 41–42. The trial court decided that the parties should have joint legal custody of their two children, but that the physical custody of the children would be divided. The court granted to appellant custody of Joanna, age 3, and to respondent custody of Laura, age 6.

We reversed the trial court's custody decision on Laura, based on a four-part analysis. First, we found the trial court's findings of fact were inadequate. The order for judgment contained no findings showing what factors supported the decision for split custody. There are a number of statutory factors that a trial court considers when making a custody decision. *See* Minn.Stat. § 518.17, subds. 1, 2. The trial court's recitation of these factors does not satisfy the supreme court's mandate that findings be "set forth with a high degree of particularity." *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971).

Second, we found the decision to split the custody of the children was not supported by the evidence. A choice to separate children has repeatedly been recognized in Minnesota as "unfortunate," and the record revealed no evidence to support such a decision here. *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn.Ct.App.1984).

Third, we held that the evidence did not support a custody award that ignored the primary parenting role of the children's mother. The trial court did not identify a primary parent, but made findings that each parent was "primarily responsible" for certain aspects of parenting. We said:

> The trial court's findings erroneously omit the subject of Paula Sefkow's daily parenting role, except as to schooling, and mention only the activities of respondent.

*Sefkow*, 372 N.W.2d at 45. In so holding, we relied on Minnesota Supreme Court decisions that mandated a primary-caretaker analysis in assessing the best interests of a child. *See Weatherly v. Weatherly*, 330

N.W.2d 890 (Minn.1983); *Berndt v. Berndt,* 292 N.W.2d 1 (Minn.1980).

Finally, we rejected as unnecessary and unlawful the trial court's attention to the possibility that appellant would move away from the family's residence in Fergus Falls. The trial court did not explain whether appellant's potential move was the basis for its decision to award custody of Laura to respondent, but did condition appellant's care of Joanna on her residence in either Fergus Falls or the Fargo-Moorhead area. Such a restrictive condition is contrary to Minnesota law. *See Auge v. Auge,* 334 N.W.2d 393, 394 (Minn.1983).

In summary, because of inadequate findings, insufficient evidence to support those findings, failure to consider the role of the primary parent, and impermissible regard for limits on moving when deciding travel restrictions on custody, we reversed the trial court's placement of custody of Laura with respondent and ordered a modification of the judgment to place physical custody of both children with appellant.

### ISSUE

Should this court alter its prior decision to directly award custody of Laura to appellant?

### ANALYSIS

Our application of *Pikula* requires that we examine both the substance of custody law announced in that decision and the procedural approach announced there by the supreme court.

1. Substance

The supreme court applied and detailed the primary parent doctrine followed by this court in *Pikula v. Pikula,* 349 N.W.2d 322 (Minn.Ct.App.1984). The doctrine was introduced in *Berndt,* 292 N.W.2d at 2, and *Weatherly,* 330 N.W.2d at 892. We applied it also in *Sefkow,* 372 N.W.2d at 43–44. Using the guiding principle that custody must be awarded based on the best interests of the child, the cases hold that preserving the child's relationship with his or her primary caretaker—the person who provides the child with daily nurturence, care, and support—will almost always be in the child's best interests. The basic tenet of the doctrine is that the "intimacy of the relationship between [a primary] parent and child * * * should not be disrupted without strong reasons which relate specifically to the parent's capacity to provide and care for the child." *Berndt,* 292 N.W.2d at 2. The principle is supported by several of the statutory criteria that trial courts must consider when making custody awards. *See* Minn.Stat. § 518.17, subd. 1(c), (d), (e), (f), and (h) (1984).

We said in the case at hand that the trial court did not pay heed to evidence showing the extensive contacts of both of the Sefkow children with their mother. What we said then remains true. The findings were inadequate: they did not address the reasons for awarding custody to the father, nor the extensive caretaking by the mother. The trial court erred in its findings in deciding to award custody to respondent.

2. Procedure

In *Pikula,* the supreme court chose to remand the proceedings to the trial court for its "determination of which, if either, parent was the primary caretaker of the children at the time the dissolution proceeding was commenced." *Pikula,* 374 N.W.2d at 714. The implication of this holding leads us to conclude here to remand for the trial court's further findings on parenting care and reconsideration of its custody award.

In deciding to remand, however, we first carefully considered whether this is an appropriate proceeding for a reversal of custody together with a direct award of custody to the other parent.

Three considerations require attention.

a. Based on the importance of the intimate relationship formed between a primary parent and a child, *Pikula* demands that the trial courts assess parenting care and reach a determination of the primary

parent, if any. The appellate courts commonly affirm trial court decisions even when findings have not been adequate when the evidence nevertheless shows sufficient facts to justify the decision the trial court made.

Here, however, we must address the procedure upon reversal, the same situation the supreme court faced in *Pikula*.

b. In appropriate cases, a direct award of custody upon reversal has been part of Minnesota law for over 75 years. The first cases where the issue arose involved habeas corpus proceedings, where trial courts enforced the legal right of parents to custody of their minor children over the rights of a grandparent or other persons who had been caring for the children. In reversing the trial courts and awarding custody to the person or persons who thus far had been the primary caretaker of the children, the supreme court held that the best interests of the children would be met by permitting them to remain with the adults who had nurtured them through infancy and youth, in spite of the blood relationship between the children and the parent asking for custody. *State ex rel. Neib v. Krueger*, 143 Minn. 149, 150, 173 N.W. 414, 414 (1919) (where 14-year old child had lived happily with appellants since he was three days old, his best interests would be served by permitting him to remain with them).

The supreme court reversed decisions and reformed trial court awards in divorce proceedings as early as 1921. *See Eberhart v. Eberhart*, 149 Minn. 192, 183 N.W. 140 (1921). In *Eberhart*, as in several other cases, the trial court ordered divided custody between the parents, such that each parent had custody of the child for six months of each year. The supreme court reversed and modified, holding that the best interests of the child would not be served by divided custody and that

custody should be awarded to one or the other parent. If he cannot have the daily care and guidance of both father and mother, we are of the opinion that, to a

boy of five years old, the mother's care is most indispensable.

*Id.* at 194, 183 N.W. at 141.

Similar reversals of divided custody awards are found in *Kaehler v. Kaehler*, 219 Minn. 536, 18 N.W.2d 312 (1945); *McDermott v. McDermott*, 192 Minn. 32, 255 N.W. 247 (1934); *Larson v. Larson*, 176 Minn. 490, 223 N.W. 789 (1929). All of these cases followed the best interests doctrine in reversing the trial courts; the doctrine guided custody decisions beginning with the appellate opinion authored by Mr. Justice Mitchell in *State ex rel. Flint v. Flint*, 63 Minn. 187, 65 N.W. 272 (1895).

In determining the best interests of children, the supreme court also frequently employed the "tender years" doctrine, first given its name in *Newman v. Newman*, 179 Minn. 184, 185, 228 N.W. 759, 760 (1930). In *Johnson v. Johnson*, 223 Minn. 420, 27 N.W.2d 289 (1947), the supreme court summarized the rationale used in these cases:

To deny a child of this age his mother's love and care may lead to emotional disturbances, permanently inimical to his well-being. Because of this, on many prior occasions we have interfered where the trial court has taken a child of tender years from the mother's custody.

*Johnson*, 223 Minn. at 429, 27 N.W.2d at 294 (citations omitted).

The supreme court has on numerous occasions reversed and modified a trial court's custody award where split custody was not at issue. *See, e.g., High v. High*, 297 Minn. 512, 210 N.W.2d 309 (1973).

Reliance on the tender years doctrine declined in the early 1970s, but the underlying principle of serving the best interests of the child was then and is still the real basis for custody awards. Thus, where the record reveals no support for a trial court's award, or where a trial court's findings explaining the basis for its award are clearly in error, the supreme court has found that the best interests of the child have not been served and has turned around the custody decision.

More recently, the supreme court has reversed and reformed custody decisions under the primary parent doctrine. *See Weatherly*, 330 N.W.2d 890; *Berndt*, 292 N.W.2d 1. In *Berndt*, a three-judge panel of district court judges reversed the trial court's custody award, and the supreme court upheld the panel's determination. The supreme court held that

> [a]lthough the evidence indicates that both [parents] would be suitable custodians for [the child, her mother] has been the primary parent since the child's birth
> * * *

*Id.* at 2. The court went on to say that the "parties accept the principle that the ultimate test in all custody cases is the best interests of the child" and it agreed with the district court panel that "the best interests of [the child] will be served by placing custody with her mother * * *." *Id.* (citations omitted).

In *Weatherly*, the supreme court reversed a three-judge panel of district court judges that had affirmed a trial court award of the parties' child to the father. The court held that "[t]he trial court's evidentiary conclusions concerning the emotional stability of the parents were made against the weight of the relevant evidence," that the trial court "ignored evidence that appellant had been the primary caretaker of [the child]," and that it "failed to apply other relevant statutory criteria * * *." *Weatherly*, 330 N.W.2d at 892–93. The supreme court concluded that "[t]he grant of custody to respondent was not in the best interests of the child as the statute requires." *Id.* at 893.

c. The procedure for remand utilized in *Pikula* adds a new dimension to the role of the appellate court in its choice between making a direct award of custody upon reversal and remanding to the trial court for additional findings and reconsideration. Our review of previous custody award reversals reveals that the supreme court has chosen to make direct custody awards for a variety of reasons, including disapproval of divided custody (*Eberhart, Larson, McDermott, Kaehler*), strict application of the

tender years doctrine in favor of the mother (*Larson, McDermott, Kaehler*), a need for finality in fixing the permanent custody of children (*McDermott, Kaehler, High*), the trial court's failure to consider strong positive or negative evidence on the part of one parent (*Berndt, Weatherly*), and the trial court's lack of jurisdiction to award custody (*Cummiskey v. Cummiskey*, 259 Minn. 427, 107 N.W.2d 864 (1961)).

In *Pikula*, the supreme court found that the trial court's findings of fact were not clearly erroneous and that the evidence was adequate to support the findings the trial court made, even though the grounds for the trial court's failure to consider certain evidence were not apparent, and even though its findings regarding the mother's fitness as a custodial parent were "troubling in light of the whole record." *Pikula*, 374 N.W.2d at 710. The supreme court adopted the substantive rule that

> when both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Id.* at 713. The supreme court then remanded the case for a determination of which parent, if either, was the primary caretaker of the children at the time the dissolution proceeding began. *Id.* We must now await more complete delineations between cases where remand is required and where reversal is appropriate.

Under the present circumstances, however, and upon re-examination of *Sefkow*, we are satisfied a remand should occur.

In *Pikula*, the supreme court dealt with findings that were silent as to parenting care. The supreme court corrected the conclusions of this court that trial court findings were clearly erroneous. Neither the opinion of this court nor that of the supreme court indicated whether the evidence in *Pikula* suggested which parent was primary caretaker.

After examining evidence presently of record in this case, we found it necessary in

our earlier decision to conclude that appellant Paula Sefkow was the primary parent of Laura and Joanna. Arguably, that is no less the case under the substantive standards now announced in *Pikula*. Neither the trial court nor the parties, however, have had an opportunity to address this question with regard for the carefully defined substantive standards in *Pikula*, and the parties have not had an opportunity to present additional evidence that may bear on this determination.

Accordingly, we conclude here, having regard for the procedure of remand introduced in *Pikula*, that the physical custody of the older child of the parties should be examined and redetermined by the trial court.

### DECISION

The matter is remanded for findings and conclusions of the trial court, consistent with this opinion and the supreme court's decision in *Pikula v. Pikula*, for a determination of physical custody of Laura Sefkow.

Save as to its language on modification of physical custody of the older child of the parties, the decision of the court is as reported in *Sefkow*, 372 N.W.2d at 50.

Remanded in part.