**In re the Marriage of Robert J. SEFKOW, Petitioner, Respondent,**

v.

**Paula D. SEFKOW, Appellant.**

**No. CX–87–403.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Granted Dec. 18, 1987.

Charles R. Kennedy, Wadena, for respondent.

Bruce E. Bohlman, Grand Forks, for appellant.

Considered and decided by the full court en banc consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK,

LANSING, HUSPENI, FORSBERG, NIERENGARTEN, RANDALL, CRIPPEN, NORTON, MULLANY * and LOMMEN,* JJ., with oral argument waived.

## OPINION

NORTON, Judge.

We have considered this case twice before. Our first decision was announced in *Sefkow v. Sefkow*, 372 N.W.2d 37 (Minn.Ct. App.1985) (*Sefkow I*). In *Sefkow I*, we reversed the trial court's decisions regarding split physical custody, child support, spousal maintenance, and attorney fees; modified the decision by awarding physical custody of both children to appellant; and remanded for further findings on the amount of child support and spousal maintenance. On petition for further review, the supreme court remanded the case to this court for reconsideration in light of *Pikula v. Pikula*, 374 N.W.2d 705 (Minn. 1985). *Sefkow v. Sefkow*, 374 N.W.2d 733 (Minn.1985).

Our second decision was announced in *Sefkow v. Sefkow*, 378 N.W.2d 72 (Minn.Ct. App.1985) (*Sefkow II*), *pet. for rev. denied* (Minn. Jan. 17, 1986). In *Sefkow II*, we remanded to the trial court:

> for findings and conclusions * * * consistent with this opinion and the supreme court's decision in *Pikula v. Pikula*, for a determination of physical custody of Laura Sefkow.

*Id.* at 77. Except for the language on the custody of Laura, we reaffirmed that "the decision of the court is as reported in *Sefkow*, 372 N.W.2d at 50." *Id.*

On remand, the trial court awarded custody of both children to respondent Robert Sefkow, denied both parties spousal maintenance, ordered appellant Paula Sefkow to pay monthly child support in the amount of $150 per child, and ordered the parties to share equally in the transportation expenses incurred in the exercise of appellant's visitation rights. We reverse.

* Acting as judge of the Court of Appeals by ap-

## FACTS

The facts of this case are set forth in detail in our initial decision. *Sefkow I*, 372 N.W.2d at 41–42. We summarize here, and set forth those relevant facts that have occurred subsequent to *Sefkow I*.

The parties were married in 1969, and they have two children, both adopted as infants. Laura was born July 5, 1979, and Joanna was born April 15, 1982. In May 1983, when the parties separated, Laura was four years old and Joanna was one year old.

During the summer of 1983, both children lived with appellant Paula Sefkow at the parties' lake home. In September 1983, respondent Robert Sefkow took physical custody of Joanna by picking her up from the babysitter without notice. Later that same day, appellant was served with respondent's dissolution summons and petition.

From November 1983 until the dissolution decree was entered in November 1984, the parties shared physical custody of the children, so that the children lived with each parent during part of each week. The judgment and decree of November 1984 granted custody of Laura to respondent and of Joanna to appellant. From that time until February 23, 1987, when the judgment on remand was entered, each party had physical custody as decreed by the trial court, despite our intermediate reversal of the custody award. *See Sefkow I*, 372 N.W.2d at 50 (dated July 30, 1985). During that time, the children were together on weekends, holidays and two months during the summer.

On July 31, 1986, appellant moved to change the children's residence to Appleton, Wisconsin, where she had been offered a full-time position as director of a program for gifted and talented children. At that time, appellant was no longer employed at the Montessori school in Fargo. The salary for the job in Wisconsin was $26,339 per year, twice what appellant had earned at the Montessori school.

pointment pursuant to Minn. Const. art. 6, § 2.

Respondent opposed appellant's motion, arguing it was premature regarding Laura, whose physical custody had not yet been heard on remand, and not in Joanna's best interests. The court treated respondent's affidavit as a motion to modify Joanna's physical custody, and the required evidentiary hearing and remand trial were held August 14–16, 1986. Following the trial, but prior to its decision, the court allowed appellant to remove Joanna to Appleton, while ordering that Laura stay with respondent in Fergus Falls.

On February 23, 1987, the trial court issued its decision, accompanied by 83 pages of findings of fact. The court awarded physical custody of both children to Robert Sefkow, based on its conclusions that Robert Sefkow was the primary parent of both children at the time the dissolution proceedings began in 1983, that a modification of Joanna's custody to Robert Sefkow was necessary because the proposed move to Wisconsin would endanger her, and that a split custody arrangement could no longer be tolerated.

The trial court ordered Paula Sefkow to pay monthly child support of $150 per child, and ordered the parties to share equally in the transportation costs associated with appellant's visitation rights. The court determined that because appellant remarried in October 1986, two months after the remand trial, spousal maintenance was no longer an issue, and it therefore denied appellant's request for maintenance. The court did not award attorney fees to either party. Paula Sefkow appeals.

## ISSUES

1. Was it error to modify Joanna's custody?

2. Was it error to award Laura's custody to respondent?

3. What is an appropriate child support award?

4. Was it error to deny an award of maintenance?

5. Is appellant entitled to attorney fees?

## ANALYSIS

### I.

### Joanna's Custody

In contested custody modifications, the trial court must satisfy a three-part statutory test. The court must find that "a change has occurred in the circumstances of the child or [her] custodian," that "modification is necessary to serve the best interests of the child," and that:

The child's present environment endangers [her] physical or emotional health or impairs [her] emotional development and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii) (1986).

The trial court listed several bases for its conclusion that Joanna's environment with appellant in Appleton, Wisconsin endangers her emotional health and impairs her emotional development. These are: (1) appellant's interference with the existing bond between Joanna and respondent; (2) care by a babysitter in Wisconsin that means Joanna will be "withdrawn" from a family unit; (3) Joanna's ready adaptation to a stable, continuous family unit with respondent in Fergus Falls, Minnesota; (4) the presence of extended family in Minnesota and North Dakota; (5) the unknown nature of the circumstances of the family unit in Wisconsin; (6) the further disruption in appellant's family unit caused by an anticipated change in that unit (a reference to appellant's impending marriage); (7) Joanna's preference for residing with respondent; and (8) the court's determination that respondent was Joanna's primary caretaker.

Except for the finding on interference,[1] these findings are either not supported by the evidence or do not establish endanger-

1. Although the finding on appellant's interference is supported by some evidence in the record, the evidence is limited to some disparaging remarks about respondent, made by appel-

lant and her mother in the children's presence, and does not constitute a harm that will outweigh the advantage to Joanna of staying with her mother.

ment, or both. Moreover, rather than demonstrating the alleged dangers of permitting Joanna to move to Wisconsin with appellant, the findings focus on the alleged benefits of placing Joanna with respondent.

With regard to the concern over babysitting, both parties are now employed full-time. Therefore, Joanna's care will be entrusted to another person for several hours each work day and she will be "withdrawn" from the family unit during those hours, whether her home is with appellant or respondent. In addition, Joanna is now of school age, and will be attending schools in the Wisconsin school district where Paula Sefkow will be employed. The person who recommended Paula Sefkow for the job in Wisconsin testified that the position has "very flexible types of hours" and that appellant would be able to attend the children's school functions because, as an administrator for the school district, she will regularly travel between the various school buildings in the district.

The trial court's confidence that Joanna will "readily adapt" to the Fergus Falls family unit is speculative, given that Joanna has lived with her mother for all but a few months of her life. Although the presence of extended family in the Fergus Falls area may be a positive influence on Joanna's upbringing, the absence of extended family near the Wisconsin home is not a factor that will endanger her emotional health or impair her emotional development.

Similarly, any concerns about appellant's family unit are speculative: respondent offered no evidence indicating that the addition of appellant's present husband to the family unit will be detrimental to Joanna's stability, and any negative inference from the lack of information about appellant's husband is unfairly prejudicial. In fact, at the close of the remand trial, the court told the parties that both Laura and Joanna indicated positive feelings towards appellant's future husband, and that neither of them expressed any problems associated with appellant's impending marriage. Rather, they indicated that their family was now going to increase, and that they

were going to have "not only two mommies, but two daddies." Appellant's employment was secure, and she had already made a tentative selection of a home in Appleton that would include a separate bedroom for Joanna.

As for Joanna's expressed custody preference, she alternately told the trial court that she wanted to live with both parents, with her father, or with her father one week and her mother the next week. The trial court also told the parties that he got the feeling that Joanna had been advised by someone that the question would be asked. Joanna's inability or unwillingness to consistently express a preference regarding where she would like to live contradicts the trial court's conclusion that she expressed a preference to live with her father. Finally, the trial court's conclusion that Robert Sefkow was Joanna's primary parent is not supported by the evidence, nor is it relevant to a motion for modification of her custody brought three years after the initial custody determination.

Even if the court's findings had support in the evidence, respondent did not meet his burden of showing that Joanna's new environment endangers her, or that the harm likely to be caused by the change in environment outweighs the advantage of preventing her removal to Wisconsin. *See Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983) (party opposing motion to remove must establish by a preponderance of the evidence that the move is not in the best interests of the child); Minn.Stat. § 518.-18(d)(iii) (1986). Respondent failed to produce evidence that the move would result in any greater distress to Joanna than the normal turmoil caused by a family's relocation.

Those reasons that have some support in the record do not rise to the level of endangerment that must exist before a modification of custody can be granted. *See, e.g., Johnson v. Smith*, 374 N.W.2d 317, 320 (Minn.Ct.App.1985) (visitation problems, deterioration of the mother-son relationship and special disciplinary needs of a 12–year-old boy do not support a finding of endangerment), *pet. for rev. denied* (Minn. Nov.

18, 1985); *Pogreba v. Pogreba*, 367 N.W.2d 677, 678–79 (Minn.Ct.App.1985) (prima facie case of endangerment not found where father alleged that mother's work schedule and living arrangements endangered child's welfare); *Peterson v. Peterson*, 365 N.W.2d 315, 318 (Minn.Ct.App.1985) (mother remarrying someone younger than herself is not per se detrimental to child), *pet. for rev. denied* (Minn. June 14, 1985). *Compare Gustafson v. Gustafson*, 376 N.W.2d 290, 292–93 (Minn.Ct.App.1985) (evidence that mother's male friend moved in with mother and children in violation of court order and that male friend's attempts to undermine children's relationship with their father was sufficient to support changing custody of children from mother to father); *Taflin v. Taflin*, 366 N.W.2d 315, 320 (Minn.Ct.App.1985) (father's affidavit alleged facts, which if true, would establish emotional endangerment to children. Facts alleged included mother's voluntary relinquishment of children and mother depriving children of benefit of support payments, using them instead to support herself and the man with whom she lived).

█ Furthermore, in motions for modification of custody, "the trial court must consider the negative effects of separating the child and the custodial parent." *Auge*, 334 N.W.2d at 399 (citing Minn.Stat. § 518.-18(d) (1982)). This consideration squarely addresses the overriding concern for the child's best interests. *See id.* at 399, 400. The trial court did not address the essential question regarding the nature of the relationship between Joanna and her mother, and made no findings on the trauma that a change in custody will cause Joanna to suffer, as she is separated from the parent with whom she has always lived. For these reasons, we conclude that Joanna's permanent physical custody should remain with appellant Paula Sefkow, subject to the visitation schedule adopted by the trial court.

We base our conclusion on the lack of evidence of endangerment and the impermissible failure to consider the negative effects of separating Joanna from Paula Sefkow, her custodial parent. However, we are further disturbed by the trial court's consideration of evidence of Joanna's primary parent. We cannot ignore this significant error.

Custody of Joanna was placed with Paula Sefkow in 1984, and that decision was never appealed. Therefore, in *Sefkow II*, we limited our remand to the trial court to a determination of physical custody of Laura, using the standards announced in *Pikula*. *Sefkow II*, 378 N.W.2d at 77.

On remand, however, the trial court found that this court had issued "an impossible directive" to determine the primary parent of Laura without determining the primary parent of Joanna. The trial court observed that the supreme court remanded the *Pikula* case to the trial court for reconsideration of the custody of *both* Pikula children, and remanded the present case to this court for reconsideration "in light of" *Pikula*. *Pikula*, 374 N.W.2d at 714; *Sefkow*, 374 N.W.2d 733. The trial court therefore concluded that the supreme court "has ordered that custody of both children be redetermined in accordance with the primary parent doctrine." This conclusion misstates the law.

█ Although one parent may typically be the primary caretaker of all of the children in a family, this is not necessarily so, and the rule of law set forth in *Pikula* treats each child individually. *See Pikula*, 374 N.W.2d at 712 (stating the general rule that "when both parents seek custody of *a child* too young to express a preference, and one parent has been the primary caretaker of *the child*, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian") (emphasis added). Here, the issue of Joanna's primary parent was not before the trial court. *Compare Pikula*, 374 N.W.2d at 707, 714 (because custody of both children was appealed, remand was necessary for determination of custody of both children). The trial court's decision to address the issue of Joanna's primary parent is not supported by *Pikula*, and exceeded the scope of the remand.

## II.

### Primary Parent of Laura

In its original determination, the trial court gave great weight to Robert Sefkow's primary responsibility for " 'the day to day providing of meals, clothing and bathing the children, placing them in bed and providing for their daily physical needs.' " *Sefkow I*, 372 N.W.2d at 44 (quoting the trial court's finding). We found the trial court gave undue reliance to these factors, and we instead focused on Paula Sefkow's giving of care "for the children during major parts of each day" when Robert Sefkow was working, and on the fact that Paula Sefkow stayed home with Laura for the first two years of her life, then traveled with her to school and back every morning for the next two years, was her teacher for one of those two years, and stayed home with her in the afternoons during the latter two years. *Id.* at 44–45. In sum, the trial court felt that performance of physical parenting duties was determinative, but we placed more weight on evidence of cumulative time spent with Laura during her four years with the family.

On remand, the trial court addressed each of the ten indicia of primary parenthood, which were adopted in *Pikula* as an aid to "determining which, if either, parent is the primary caretaker." *Pikula*, 374 N.W.2d at 713. The court found that Robert Sefkow had primary responsibility for six of the factors, that the parents shared responsibility for three of the factors, and that Paula Sefkow had primary responsibility for one of the factors. The trial court further acknowledged that the list is not the exclusive test of primary parenthood, and it therefore made the additional finding that Robert Sefkow was Laura's "psychological parent."

■ The trial court made repeated references to the effect that its findings on Laura's primary parent considered the family situation prior to "the time the dissolution proceeding was commenced," which *Pikula* set forth as the relevant time frame. *Id.* at 714. However, the trial court's recitation of facts in support of its findings reveals unconcealed consideration of events that have occurred since that time.

As just one example, the trial court gave no citations to the transcript to support its finding that Robert Sefkow was Laura's psychological parent. Rather, the court stated that its conclusion was based in part on its interview with the children. An interview with Laura Sefkow at age seven, after she had been living exclusively with her father for the previous two years, is not reliable as evidence of who was her psychological parent at the time the dissolution proceedings began three years earlier. Moreover, as with Joanna, no findings address Laura's relationship with her mother at the time the dissolution proceedings began. The findings address Robert Sefkow's positive relationship with Laura, and give special attention to what are characterized as exceptional efforts on his part, apparently in contrast to parenting efforts of many other fathers. However, a review of the record shows that friends and family members testified that Laura had strong and positive relationships with both her parents.

The supreme court has previously reversed custody awards where the trial court disregarded all evidence that reflected negatively on one parent and ignored evidence favoring the other parent. *Weatherly v. Weatherly*, 330 N.W.2d 890, 892 (Minn.1983); *Berndt v. Berndt*, 292 N.W.2d 1, 2 (Minn.1980). Here, the trial court's consideration of post-separation events not only violated *Pikula* but resulted in findings that unfairly focused on Laura's relationship with her father while ignoring her relationship with her mother. The court's consideration of post-separation events totally mars its ultimate conclusion that Robert Sefkow was Laura's primary parent at the time the dissolution proceedings began.

■ We find additional guidance in *Pikula*, where the supreme court held: "When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely

equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness." *Pikula,* 374 N.W.2d at 713–14. Here, Paula Sefkow was responsible for Laura's care from approximately 8:00 each morning until at least 5:00 and sometimes 6:00 each evening. This responsibility was not altered by the parties' decision to enroll Laura in the Montessori school or by appellant's involvement as a teacher at the school.

At the same time, Robert Sefkow provided the majority of Laura's care in the early morning hours, when he returned home each evening, and often on the weekends. He willingly assumed primary responsibility for Laura whenever he was available to do so. Because Paula Sefkow was not primarily responsible for Laura during these hours, she was able to take the time to perform other necessary household duties, such as cooking, cleaning, and washing clothes.

Given this view of the pre-separation family situation, there is inadequate evidence to conclude that either parent was Laura's primary parent under the carefully defined *Pikula* standards.

### Custody of Laura—Best Interests

Because the court erred in determining that Robert Sefkow was Laura's primary parent, the *Pikula* primary parent preference does not arise and the determination of Laura's custody must be based on other indicia of the child's best interests. *See Pikula,* 374 N.W.2d at 714 (when no preference arises, the court must limit its inquiry to other indicia of parental fitness, under the guiding principle in all custody cases of the best interest of the child); *Regenscheid v. Regenscheid,* 395 N.W.2d 375, 379 (Minn.Ct.App.1986) (other indicia of parental fitness are addressed in Minnesota Statutes § 518.17, subdivision 1, which lists factors relevant to the best interest of the child), *pet. for rev. denied* (Minn. Dec. 23, 1986). In Laura's case, relying particularly on the importance of her sibling relationship with Joanna, we conclude that Laura's best interests mandate that her custody also be awarded to Paula Sefkow.

The decision is made more difficult by the length of time that has passed since the initial custody decision. Four of the nine statutory criteria that bear on best interests "rest on the centrality of continuity of care and environment." *Pikula,* 374 N.W.2d at 711 n. 1. Nearly four years have passed since the breakdown of the marriage, and nearly three years have passed since the trial court first awarded Laura's custody to Robert Sefkow. Laura has spent those years in a relatively stable and secure environment, and appears to be well integrated into her father's new family unit. *See* Minn.Stat. § 518.17, subd. 1(e) and (f) (1986). She also appears happy in her present school situation. *See id.* subd. 1(d). On the other hand, Laura was also happy, secure, and well-adjusted at the time of the initial custody decision, which followed upon nearly one year of a custody arrangement in which the sisters stayed together but spent half of each week with each parent.

■ The trial court initially ordered a split custody arrangement, and now contends that the separation was justified at that time by the difference in the children's ages, physical needs, and educational needs. Now, in awarding custody of both children to Robert Sefkow, the trial court on remand relied heavily on the policy against separating children. Throughout the proceedings, there has been consistent agreement that the children's best interests would be served by permitting them to remain together. In the absence of compelling reasons for a split custody arrangement, none of which have been presented here, the best interests of Laura are served by permitting her to live in the same home as Joanna. *See Schultz v. Schultz,* 266 Minn. 205, 123 N.W.2d 118 (1963); *Kaehler v. Kaehler,* 219 Minn. 536, 18 N.W.2d 312 (1945); *McDermott v. McDermott,* 192 Minn. 32, 255 N.W. 247 (1934); *Larson v. Larson,* 176 Minn. 490, 223 N.W. 789 (1929); *Eberhart v. Eberhart,* 149 Minn. 192, 183 N.W. 140 (1921); *Imdieke v. Imdieke,* 411 N.W.2d 241 (Minn.Ct.App.1987); *Rinker v. Rinker,* 358 N.W.2d 165 (Minn. Ct.App.1984).

On this third appeal, nearly two years have passed without a final determination of Laura's custody, a tragic and unfortunate consequence of the law. The need for finality in fixing the permanent custody of the children is overwhelming under the protracted circumstances of this case. *See High v. High,* 297 Minn. 512, 210 N.W.2d 309 (1973); *Kaehler,* 219 Minn. 536, 18 N.W.2d 312; *McDermott,* 192 Minn. 32, 255 N.W. 247.

Because of this need for finality, because we have concluded that Joanna's custody with her mother must continue, and because we agree with the trial court that Laura's best interests will be served if she is permitted to stay with her sister, we conclude that Paula Sefkow should be awarded permanent physical custody of Laura, subject to the visitation schedule adopted by the trial court.

## III.

### Child Support

In *Sefkow I,* this court remanded for additional findings and conclusions on several factors relevant to the determination of the appropriate amount of child support. *See Sefkow I,* 372 N.W.2d at 48–49. On remand, the court made findings on both parties' net monthly incomes and reasonable monthly expenses. However, the court did not make findings on the resources and needs of the children. *See Moylan v. Moylan,* 384 N.W.2d 859, 863–64 (Minn.1986) (trial court must make findings on all relevant statutory factors). The court found that the child support guidelines would require Paula Sefkow to pay child support of $731.70 per month. However, the court ordered child support of only $150, based on the disparity in the parties' incomes and the transportation expenses associated with visitation.

■ In the usual case, the lack of complete findings to support a child support award requires a remand to the trial court for additional findings. *See id.* This case, having already been remanded once, and involving an appellate reversal of custody, is not the usual case. Given that our custody determination places both Laura and Joanna with appellant Paula Sefkow, and that the primary reason for deviating downward no longer exists if the children are in her custody, we apply the statutory guidelines to the trial court's finding on Robert Sefkow's net monthly income of $4786, and order that he pay child support in the amount of $1200 per month. *See* Minn.Stat. § 518.551, subd. 5 (1986) (Guidelines for support for an obligor with monthly income of $4001 or more shall be the same dollar amounts as provided for in the guidelines for an obligor with a monthly income of $4000, which, for the support of two children, is 30% of $4000).

## IV.

### Maintenance

In *Sefkow I,* we found that Paula Sefkow is entitled to 60 months of maintenance, but remanded for findings on her reasonable and necessary expenses and, based on those reasonable expenses, for a determination of the appropriate amount of maintenance. *Sefkow I,* 372 N.W.2d at 49–50. However, on remand, the trial court found that maintenance is no longer an issue because Paula Sefkow has now remarried.

■ As with child support, the erroneous failure to award maintenance as ordered in *Sefkow I* would typically require a remand to the trial court. However, because the need for finality in this case is so compelling, and because the trial court has once refused to follow our instructions, we have also determined to decide the maintenance issue. *See Cashman v. Cashman,* 256 N.W.2d 640, 642 (Minn.1977) (trial court abused its discretion in denying an award of permanent alimony, and was ordered to provide permanent alimony of $500 per month); *Kaste v. Kaste,* 356 N.W.2d 64, 69 (Minn.Ct.App.1984) (trial court abused its discretion when it amended divorce decree to reduce maintenance award from permanent to temporary maintenance, and was ordered to reinstate original judgment). We find this particularly appropriate where appellant's need for maintenance has ended, so that this court

is in effect ordering a money judgment for maintenance arrearages.

██ Appellant requested an award of $1000 per month, and respondent proposed to pay her $400 per month. Since *Sefkow I*, appellant has successfully obtained gainful employment in the area in which she is trained, and she has now remarried. However, this does not alter our original determination that some maintenance was appropriate during those years of rehabilitation. Using an average of the amounts requested by the parties, maintenance is appropriate in an amount equal to $700 per month for two years, covering the period from the date of the dissolution judgment (November 1984) through the date of appellant's remarriage (October 1986). The trial court is directed to enter a money judgment for $16,800 for appellant, to compensate her for maintenance previously ordered by this court but never decided by the trial court.

## V.

### Attorney Fees

██ Both parties have expended considerable expense in attorney fees during this protracted litigation. Respondent is an attorney and may have the services of an attorney available to him at a reduced cost. Appellant, however, has not demonstrated that she is so unable to pay her own attorney so as to require an additional award of attorney fees. See *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct.App.1984).

### DECISION

The trial court erred in modifying the custody of Joanna and in awarding custody of Laura to respondent. Custody of both children is awarded to appellant Paula Sefkow, effective immediately. Respondent is ordered to pay child support of $1200 per month, and to pay appellant $16,800 for maintenance through the date of appellant's remarriage. No attorney fees are awarded.

Reversed.

POPOVICH, C.J., and WOZNIAK, RANDALL, MULALLY, NIERENGARTEN and FORSBERG, JJ., dissent.

LESLIE and STONE, JJ., took no part in the consideration or decision of this case.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would affirm the trial court for the following reasons:

1. The trial court did not abuse its substantial discretion in finding respondent was Laura's primary caretaker. It clearly enumerated each *Pikula* factor and set forth, in detail, the facts relating to each factor. After careful review, I cannot conclude these findings are unsupported by the record.

In several instances, the parties' testimony was contradictory regarding responsibility for Laura's care. When that occurs, this court is bound to defer to the trial court's unique ability to judge the demeanor and credibility of the witnesses. *See* Minn.R.Civ.P. 52.01. We must view the evidence in the light most favorable to the court's findings. *Rinker v. Rinker*, 358 N.W.2d 165, 167 (Minn.Ct.App.1984).

The majority places great emphasis on the trial court's failure to recognize the daytime responsibility of appellant for Laura's care. The court did, however, address this issue and found appellant was not a traditional homemaker, but instead spent substantial time outside the home completing her education and eventually obtaining employment at the Fargo Montessori School. Although appellant and Laura were at the school at the same time, as the trial court found it cannot be said appellant was directly responsible for Laura during this period. A babysitter brought her to school and for much of the typical day she was independent of her mother.

Given these findings, which were not shown as erroneous, it is incorrect for this court to assume the role of the trial court by contrarily concluding neither party was Laura's primary parent.

2. Minn.Stat. § 518.18(d) (1986) establishes a three-part test for custody modifi-

cation when the parties have not agreed to a change. *Chapman v. Chapman*, 352 N.W.2d 437, 440 (Minn.Ct.App.1984). The court is to retain the custodian established by the prior order unless it specifically finds the evidence supports those factors listed in Minn.Stat. § 518.18(d). *Chapman*, 352 N.W.2d at 440.

Here, after considering the evidence regarding respondent's motion to modify Joanna's physical custody, the trial court found appellant's removal to Wisconsin was a substantial change in circumstances of the children since the prior decision. The trial court also found:

> [I]t is not in the best interests of Joanna that she be moved to Appleton, Wisconsin, and that her best interests require that she reside with [respondent] in his family unit in Fergus Falls, Minnesota.
>
> \* \* \* \* \* \*
>
> It is in her best interests that she remain in a wholesome, stable, continuous family unit.
>
> Because of the interference by [appellant] with the bond existing between [respondent] and Joanna, because it places her in an environment where she will be regularly under the care of a babysitter and withdrawn from a family unit, because she can readily adapt to a stable, continuous family unit with [respondent] at Fergus Falls, Minnesota, because she has extended family in Minnesota and North Dakota, because the circumstances of the family unit she would reside with in Wisconsin are unknown, because it is likely that settlement in Appleton, Wisconsin, will be further disrupted by an anticipated change in [appellant's] family unit, and because it is Joanna's preference that she reside with [respondent] and most importantly, because this Court has found that [respondent] was the primary caretaker of Joanna, the court finds that Joanna's environment with [appellant] at Appleton, Wisconsin, endangers her emotional health and will impair her emotional development. Because of the foregoing circumstances, the harm likely to be caused to Joanna by her continuing in the physical custody

of [appellant] outweighs any advantage of that situation. Similarly, the advantages of transferring physical custody to [respondent] outweigh any harm likely to be caused by a change of her custody. Thus, the Court finds that the physical custody of Joanna should be awarded to [respondent], and the decree modified accordingly, and the motion of [appellant] for permission to move Joanna's residence to Wisconsin is denied.

The court's findings clearly satisfy the three-part statutory test of section 518.18(d). I also note split custody of Joanna at such a distance from her sister Laura endangers Joanna's development and health. I would therefore hold the trial court did not err in modifying Joanna's custody and awarding physical custody of both children to respondent.

3. The majority agrees with the trial court that splitting custody of the children is not in their best interest, yet they reverse the trial court's award of custody by substituting their judgment for the trial court's, despite the record and detailed findings. Awarding custody of children is always a heart-rending matter, but a trial court should not be reversed simply because the reviewing court might have arrived at a different conclusion had it been the original court.

4. On remand, the trial court made findings as to both parties' net monthly income and reasonable monthly financial requirements. Based on appellant's net monthly income, the trial court found she should pay respondent child support in the amount of $731.70 per month. Because of the "disparity between the parties' gross income and the expense of transportation for visitation," the trial court, however, ordered appellant to pay $150 per child per month.

In *Bjorke v. Bjorke*, 354 N.W.2d 107 (Minn.Ct.App.1984), we held the trial court may deviate downward from the child support guidelines if it makes express findings of fact as to the reason for the lower award. *Id.* at 110. Here, the trial court made the required findings which are supported by the record. I would hold the trial court's downward deviation proper.

5. I disagree with the majority's decision to usurp the role of the factfinding trial court by establishing child support on a de novo basis. Even if both children were to be placed with appellant, it is incorrect for this court to redetermine support. Remand is necessary to allow the trial court to perform its role. This method must be used no matter how unusual or unfortunate the facts of any given case may be.

6. On remand, the trial court found since appellant has remarried, spousal maintenance is no longer an issue. I agree. The Minnesota Supreme Court has held absent an express provision in the divorce decree, Minn.Stat. § 518.64, subd. 3, terminates spousal maintenance upon remarriage. *Gunderson v. Gunderson*, 408 N.W.2d 852, 853–54 (Minn.1987). The majority, acting de novo, set an amount of $16,800 for maintenance and orders the trial court to enter judgment in that amount, even though they admit a remand would be typically required for a trial court to set the amount if there was an erroneous failure to award maintenance.

WOZNIAK, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

RANDALL, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

MULALLY, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. Although I agree with the majority that Joanna's permanent physical custody should remain with Paula Sefkow, I disagree with this court's award of Laura's custody to Paula Sefkow.

The trial court judge had two issues before him. The first issue involved the custody of Laura Sefkow. This court had previously remanded the *Sefkow* case to the trial court for a "determination of phys-

ical custody of Laura Sefkow" which was consistent with *Pikula*. *Sefkow II*, 378 N.W.2d at 77. As directed the trial court made specific findings from which it concluded that at the time of the dissolution, Robert Sefkow was Laura's primary parent. In light of these findings, the trial court granted custody to Robert.

The record could support a conclusion that either party was Laura's primary parent. Had the trial court reached that conclusion, it should then have proceeded to a "best interest of the child" analysis. *See Pikula v. Pikula*, 374 N.W.2d 705, 713–14 (1985). However, the trial court found on the basis of the evidence before it, and its application of *Pikula* to its findings, that the primary parent of Laura was Robert Sefkow. It is not for this court to make findings on which parent is primary or decide that neither was. We are limited to determining whether the trial court abused its discretion by making findings that are unsupported by the evidence or by improperly applying the law. *Pikula*, 374 N.W.2d at 710. The majority erred in substituting its own findings that neither parent was primary and proceeding to apply a "best interests" analysis, by which it concluded that it is not in Laura's best interest to separate her from Joanna and thus they award custody to Paula Sefkow. The trial court's findings will not be set aside unless clearly erroneous and deference must be given to the opportunity of the trial court to assess the credibility of the witnesses. Minn.R.Civ.P. 52.01. The evidence must be viewed in the light most favorable to the court's findings. *Rinker v. Rinker*, 358 N.W.2d 165, 167 (Minn.Ct.App.1984). Because the record supports a finding that Robert Sefkow was Laura's primary parent, there was no abuse of discretion and this court should have affirmed the award of Laura's custody to Robert.

The second issue facing the trial court was modification of Joanna's custody. In order to modify Joanna's custody, the court must find that the move to Wisconsin would endanger her physical or emotional health or impair her emotional development. Minn.Stat. § 518.18(d)(iii) (1986). As the majority points out in detail, the

record will not support a finding that Joanna's physical or emotional health would be endangered by a move to Appleton, and thus there is no basis for modification. I would reverse the trial court's award of Joanna's custody to Robert Sefkow and allow Paula to move Joanna to Wisconsin.

I recognize that my reasoning again leads to split custody of the children. While regretable, such result is unavoidable given our function as an error correcting and not a fact-finding court. While split custody arrangements disrupt sibling relationships and are unfortunate, they are not conclusively erroneous. *Kennedy v. Kennedy,* 403 N.W.2d 892, 898 (Minn.Ct. App.1987); *Johnson v. Lundell,* 361 N.W.2d 125, 128 (Minn.Ct.App. 1985); *Rinker,* 358 N.W.2d at 168. In *Sefkow II* we remanded to the trial court for findings and conclusions on Laura's custody which were consistent with our decision and with *Pikula. Sefkow II,* 378 N.W.2d at 77 (Minn.Ct.App.1985). In so doing, we stepped aside to allow the trial court to exercise its discretion. We cannot now fault the trial court for doing just that and awarding Laura's custody to Robert Sefkow. However, the trial court clearly erred in modifying Joanna's custody.

FORSBERG, Judge (dissenting).

I join in the dissent of Judge Nierengarten.